## CLARA E. STONE *vs.* EDWIN L. SANBORN.

On the trial of an action for breach of an oral contract, a letter of the defendant to the plaintiff, offered by the latter to show admissions of the defendant that the contract was made and broken by him, is admissible in evidence, although it is one of a series of letters between the parties, all of which were in the plaintiff's possession, and some, including his own letter to which the one in question was a reply, he has voluntarily destroyed or refuses to produce; and the refusal of the judge to instruct the jury that, in the absence of those letters, and in view of their voluntary destruction by the plaintiff, they have a right to draw the most unfavorable inferences against the plaintiff as to their contents, affords the defendant no ground of exception, if the judge instructs them that the plaintiff's failure to produce all the letters and destruction of some of them are circumstances to be considered in determining the weight and effect to be given to the letter produced.

On the trial of an action for breach of a contract which both parties agree was terminated at a certain time, and differ only as to whether the termination was by mutual consent, the refusal of instructions to the jury, which were framed on the assumption that the contract subsisted some months later, affords no ground of exception.

CONTRACT for breach of promise of marriage. Writ dated April 23, 1867. Answer, that any engagement or promise of marriage, made by the defendant with the plaintiff, was conditional, and terminable at any time at the option of either party, and was terminated by mutual consent. Trial in the superior court, before *Wilkinson*, J., who allowed a bill of exceptions substantially as follows :

" The plaintiff testified, in her own behalf, to an absolute engagement being made about June 20, 1864; and offered in evidence, in further proof of the engagement and the violation of the same by the defendant, the mutual correspondence by letters between the parties. The defendant testified that, on July 4, 1864, when he gave her an engagement ring, the alleged condition was mutually agreed upon as a part of the engagement. The plaintiff offered evidence that the defendant was engaged to another woman in 1866 and married to her in 1867 ; and that the plaintiff then proceeded to bring this action.

" It appeared that a change of feeling and a coldness toward the plaintiff occurred, and was manifested to her, by the defendant, in January 1865, and the matter was a subject of difference and conversation between them in interviews during that

month; that finally, in February 1865, the defendant returned to the plaintiff her letters in a letter dated February 13, 1865, and the plaintiff returned to him the ring and a book which he had given her; that she kept the defendant's letters to her, and refused to return them, as he in one of his letters had given her permission to do so, and for the reason alleged by her also that her parents would not permit her to return them.".

The following was the material part of the defendant's letter of February 13, 1865: " Inclosed you will find all the letters you have written me since March 1863 up to date, one hundred sixty-six in all, of the first series, and thirty-four of the second. All that I request you to return is the letters I have written, and the ring, which I doubt not you will do, perhaps ere you receive these. Then everything will be settled, and I hope you will soon forget me."

" The plaintiff testified that, on the day when she received her returned letters from the defendant, she suddenly and without any particular design destroyed a portion of them by burning them, and kept the rest. The defendant put in evidence one etter from her, dated February 17, 1865, and another written to the defendant's sister on December 29, 1865, tending to show, as he contended, that she did not destroy them as or when she claimed to have done it, if at all."

All but the formal parts of the letter of February 17, 1865 were as follows: " Your request in regard to the letters has just reached me, and it shall not pass unnoticed, yet it must un-granted. You told me in one of your recent letters that if I wished I might keep them as a parting favor; you also told me the same when you were last here; and I am inclined to hold you to that promise, though you neglect to fulfil others. I shall burn part of them. The rest I shall keep till I wish them no longer. I know it seems cruel to you that I should disappoint you; but remember that I too have had disappointments since I first knew you, and you must not murmur at this trifling refusal, or rather refusal of a trifling request. Besides, to say nothing of my own wish to retain them, my parents positively refuse to let me return them; and of course my duty to them is

more binding than to another now. I never asked you to return the letters I have written you; but as you voluntarily sent them to me, I shall do by them as I supposed you would do. I may preserve two or three of them."

In her letter of December 29, 1865, to the defendant's sister, the plaintiff began thus: " Doubtless you will be surprised to receive a letter from me at this late hour, thus calling to your mind a subject which perhaps by you has long since been forgotten, yet to me is as fresh as when one year ago next Monday your brother Edwin informed me that there was no longer a place for me in his affections." The letter then commented on certain gossip about the writer and the defendant, immaterial to this case, and ended as follows: " Poor worm of earth, — I pity him rather than feel indignant, for, believing as I do in retribution, he has most to suffer. I have the letters we have both written; and, if you question my fidelity or kindness to him from what he has told you, I hope some day to permit you to peruse our correspondence. Perhaps I have written as much as propriety will allow; and I will close, hoping you will not misconstrue my motive in writing to you by thinking that the thought of renewing any intimacy with him by so doing entered my mind, for nothing is further from my wishes. No matter how much suffering might be alleviated, or how much he might plead, nothing would tempt me to trust my happiness in his keeping again."

" The plaintiff's counsel offered in evidence some of the defendant's letters and some of the plaintiff's, making selections of such as they desired to put in. The defendant objected, on the ground that, the correspondence being offered to prove the engagement and the breach of the same by the defendant, the whole should be put in and not a part; that the plaintiff, having voluntarily destroyed a portion of it, or, if not destroyed, refusing to produce the whole, should not be permitted to read portions of it. But the judge overruled the objection, and permitted the plaintiff to read such letters of either party as she pleased. Some letters were read which appeared to be in reply, and in reference to the contents of a letter from the other party

which was not put in. It appeared that in January or February 1865, after manifestations of change of feeling on the part of the defendant, and some conversations had between them in reference to a continuance of the engagement, the plaintiff wrote a letter to the defendant at Boston, which was forwarded and received by him at Pittsfield, relating to the termination of the engagement, and that the defendant replied to it by letter. These two letters were among those destroyed, or not produced at the trial. The defendant contended that in this letter of hers, and in his reply, the engagement was ended by and upon her request, and by her consent. The plaintiff put in evidence her letter in reply to his letter written from Pittsfield, dated February 3, 1865, it so appearing on the face of the same. This was one of the letters which the defendant objected to, for the reason stated, particularly, and because of the nonproduction or destruction of the letter to which it was a reply. The plaintiff denied that the engagement was ended by her consent. The defendant testified, and contended, that, in her letter to him at Pittsfield, she consented to his terminating the engagement, and requested him to do so if he desired it, in substance; but not having kept a copy, he could not state the exact contents thereof. The letter written by the plaintiff to the defendant's sister in December 1865 was given and communicated to the defendant; and with the others in evidence may be referred to." Among these others was a letter from the defendant to the plaintiff, dated February 4, 1865, in reply to the plaintiff's letter to the defendant of February 3, and referring to it.

The defendant requested the following instructions to the jury:

" 1. That the breach of the contract as claimed, being in the marriage of the defendant to another party in 1867, and it appearing, in the letter of the plaintiff to the defendant or his sister, and communicated to him, that she wrote ' No matter how much suffering might be alleviated or how much he might plead nothing would tempt me to trust my happiness in his keeping again,' this was putting an end to the contract, and he had a right to rely upon it.

" 2. That if the correspondence in January and February was only to the effect and with the view of terminating the engagement by mutual consent, and the defendant ceased his attentions then because he understood, and had reason to understand, that she had consented to it, this would not be of itself a breach of the contract, in the absence of any time fixed for the marriage ; and if matters lay along in this way until the said letter to the sister was received, and in which she stated as quoted above, this would justify the defendant in taking her at her word and engaging himself to and marrying another person.

" 3. That if the proposition of marriage was made and accepted in June, as stated by the plaintiff, and yet on the 4th day of July, as stated by the defendant, the condition contended for was mutually attached to the engagement, it would be the same as if the condition had been embraced in the agreement originally as made in June on the plaintiff's evidence.

" 4. That in the absence of the missing letters, and the voluntary destruction of them by the plaintiff, the jury have a right to draw the most unfavorable inferences as to their contents as against the plaintiff."

" The judge did not give the instructions as prayed for; but instructed the jury, among other things not objected to, that whether the contract was absolute or conditional was a question for them to determine upon the evidence ; that it was competent for the parties to make it in either form, or to alter or to vary its terms in this respect at any time after it had been made, or to rescind it in whole or in part, or either party might release the other from the performance of the promise; and that whether or not any of these things had been done in the present case was a question for the jury; that if the plaintiff had used expressions in any of her letters, or otherwise, from which the defendant might fairly understand that she waived the contract or released him therefrom, and he married under that belief, the plaintiff could not recover ; that the absence of a portion of the correspondence did not make the letters introduced incompetent, but the facts that the plaintiff had destroyed some of the letters, and did not produce the whole correspondence, were circum-

stances to be considered by the jury in determining the weight and effect to be given to the letters produced."

The jury found for the plaintiff, with damages in the sum of $5500; and the defendant alleged exceptions.

*A. A. Ranney*, for the defendant.

*G. A. Somerby*, (*D. F. Crane* with him,) for the plaintiff.

GRAY, J. The contract of marriage, on which the plaintiff relied to support her action, and to which she testified, was oral. The letters between the parties which were admitted in evidence were not offered by the plaintiff as themselves constituting the contract, but as evidence of the defendant's admissions that it had been made, and of a breach by his refusal to perform it. The only objections taken at the trial to the admissibility of this evidence were, that the plaintiff had voluntarily destroyed part of the correspondence, or, if she had not destroyed it, refused to produce the whole, and should not be permitted to introduce portions of it only; and particularly that she could not put in a letter replying to one which was destroyed or not produced. We are of opinion that neither of the objections can be maintained.

The plaintiff might give in evidence against the defendant any letters of his, containing admissions material to the questions in issue, without putting in the whole correspondence between them. If letters which she introduced showed that they were written in reply to other letters, she might doubtless give in evidence those letters too, as tending to explain the replies. *Trischet* v. *Hamilton Insurance Co.* 14 Gray, 456. She was not however bound to do so, but might leave it to the defendant, upon cross-examination or otherwise, to offer any competent evidence of them or their contents, if he wished. If the ruling of Chief Baron Pollock in *Walson* v. *Moore*, 1 C. & K. 626, cited for the defendant, that the party offering the reply in evidence should put in both the letters or neither, was anything more than an exercise of discretion as to the order of proof, it is more than counterbalanced by the opinions of Lord Kenyon in the earlier case of *Barrymore* v. *Taylor*, 1 Esp. 326, and of Baron Parke in the later one of *De Medina* v. *Owen*, 3 C. & K. 72

In *Crary* v. *Pollard,* 14 Allen, 284, the reply was held admissible as evidence of notice to the party to whom it was addressed, without producing the letter to which it referred; and the question whether it was admissible for any other purpose was not considered. When a particular communication which refers to a previous one is not introduced as containing the terms of a contract, we see no more reason for obliging the party offering it to put in the previous communication also, when the communications are written, than when they are oral. In either case, whether the communications are by successive letters or by distinct conversations, the party introducing the second in evidence may, if he pleases, introduce the first also; and if he does not, the other party may. The actual custody of the papers does not affect the question which party shall introduce them, but only the steps to be taken to compel their production.

A party who wilfully destroys a document cannot indeed be permitted to testify to its contents without first introducing evidence to rebut the inference of fraud arising from his act. *Joannes* v. *Bennett,* 5 Allen, 169. *Oriental Bank* v. *Haskins,* 3 Met. 336, 337. But it is unnecessary to consider whether the plaintiff's testimony as to the circumstances under which she destroyed some of the defendant's letters was sufficient to rebut any inference of fraud in the present case; for she offered no evidence of the contents of the letters destroyed; and their destruction could not estop her to give in evidence any existing letters in themselves competent.

The result, as applied to the plaintiff's letter of February 3, 1865, to the admissibility of which the objection was most strongly urged, is this: The defendant's reply of February 4, referring to this letter of February 3, was in evidence; and this was therefore competent also. The introduction by the plaintiff of this letter of February 3 warranted, but did not oblige, her to give in evidence, if she would and could, the previous letter of the defendant to which it in turn referred. She did not offer or produce that previous letter, and the defendant testified to its contents. He has therefore no ground of exception to the course of proof at the trial.

There was no error in refusing the instructions requested. The plaintiff's letter to the defendant's sister in December 1865 did not, as was contended in the first of these instructions, put an end to the contract, but treated it as terminated by him long before. The second instruction was inapplicable to the case, because it was assumed that the engagement continued to the date of this letter; whereas both parties had contended that it had been terminated in the February preceding, and differed only upon the point whether it had been so terminated with her consent. The third was covered by the instructions given, which permitted the jury to find that the contract was originally conditional, or was afterwards made so. The fourth instruction presented a partial view of the case, and was calculated to prejudice the plaintiff with the jury. The submission to the jury of the plaintiff's failure to produce all the letters and destruction of some of them, as circumstances to be considered by them " in determining the weight and effect to be given to the letters produced," necessarily involved a consideration of the probable contents of the missing letters. All the instructions given appear to us to have been clear and just, well adapted to the case, and open to no legal exception.

*Exceptions overruled.*