## COMMONWEALTH *vs.* MAURICE A. HAYDEN.

Suffolk. `April 2, 1895. — May 21, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Grand Juror — Procedure — Evidence — Polygamy — Belief in the Death of a former Husband or Wife as a Defence.*

A special police officer is not exempt from serving as a grand juror, nor would his exemption absolutely disqualify him from service.

A grand juror may testify before the grand jury of which he is a member without affecting either the validity of an indictment in another case presented at the same sitting of the court at which he testified, or the rights of the defendant therein.

A motion to dismiss is not the proper mode of raising either the question of the validity of an indictment presented by a grand jury of which a special police officer was a member, or the objection that a member of the grand jury testified before it in another matter at the same sitting of the court at which the indictment was presented, inasmuch as neither of the causes alleged in avoidance of the indictment are matters apparent on the record.

At the trial of an indictment for polygamy a writing, purporting to be a letter written to the mother of the defendant's first wife, signed by the defendant " A. B., your son in law," and identified as his handwriting, is competent evidence against him.

A marriage may be proved by the testimony of either of the contracting parties.

An attested copy of the record of a marriage from the records of the city registrar of Boston, certified to by the assistant registrar, is admissible in evidence.

At the trial of an indictment for polygamy, in proof of the defendant's unlawful marriage, the testimony of a witness who performed the ceremony that he was a clergyman in Boston, and an ordained minister and pastor of a Congregational church, and that he had been such pastor for many years, is at least competent to prove that he was *de facto* discharging the office of an ordained minister, and is competent circumstantial or presumptive evidence within the Pub. Sts. c. 145, § 31, from which the fact of marriage may be inferred.

An honest or reasonable belief in the death of a former husband or wife is not, in this Commonwealth, a defence to a prosecution for polygamy.

INDICTMENT, on Pub. Sts. c. 207, § 4, alleging that the defendant, on April 3, 1891, at Boston, was lawfully married to one Annie Dillon ; and also that on September 2, 1894, at Boston, he unlawfully married one Emma M. Taylor.

At the trial in the Superior Court, before *Mason*, C. J., the defendant seasonably moved to dismiss the indictment assigning as causes therefor: 1. That the foreman of the grand jury which presented the indictment was a special police officer. 2. That

a grand juror testified as a witness before the grand jury of which he was a member at the same sitting of the court at which this indictment was presented.

The motion was overruled, and the defendant excepted.

The first wife of the defendant, Annie Dillon, called as a witness by the government, testified that she was married to the defendant on April 3, 1891, and an attested copy of the record of her marriage to him from the records of the city registrar of Boston, certified to by the assistant registrar, and a writing, identified as the handwriting of the defendant, purporting to be a letter written by him to one Mrs. William Dillon, mother of Annie Dillon, of Kinsale, Ireland, signed by the defendant, " Maurice A. Hayden, your son in law," were introduced in evidence.

The government also put in the testimony of a witness who married the defendant to Emma M. Taylor, that he was a clergyman in Boston and an ordained minister and pastor of a Congregational church, and that he had been such pastor for many years. The defendant excepted to the admission of this testimony, on the ground that it was not competent to prove the ordination of the witness, or his authority to bind parties in marriage.

Emma M. Taylor testified that she was married to the defendant on September 2, 1894, and that she had read a letter dated February 28, 1894, received by the defendant from Mrs. William Dillon, stating that her daughter Annie Dillon was dead. Another witness testified that the defendant had told him that his first wife, Annie Dillon, was dead, and that he, the defendant, had received a letter from her mother in Ireland saying so.

The defendant requested the judge to rule: 1. That, if the jury are satisfied from the declaration of the defendant concerning the death of his first wife that he honestly believed that she was dead, they should return a verdict of not guilty. 2. That the declaration of the defendant that his first wife was dead established and sustained the presumption of innocence, and if the jury believed that he acted in good faith and in furtherance of such belief they should acquit. 3. That if the defendant at the time of contracting the second marriage had a *bona fide* and reasonable belief that his first wife was dead, he was entitled to an acquittal.

The judge declined so to rule; and the jury returned a verdict of guilty.

The defendant alleged exceptions.

*F. F. Sullivan*, for the defendant.

*M. J. Sughrue*, First Assistant District Attorney, for the Commonwealth.

BARKER, J. 1. Special police officers are not exempt from service as grand jurors. Pub. Sts. c. 170, § 2. Nor does the fact that a juror is exempt absolutely disqualify him from service. He may be excused at his own election, or may be excepted to by any party, but, if he serves, the action of the grand jury or traverse jury is not made void. *Munroe* v. *Brigham*, 19 Pick. 368. See also *Wassum* v. *Feeney*, 121 Mass. 93; *Moebs* v. *Wolffsohn*, 143 Mass. 130.

2. There is neither authority nor reason for the contention that the indictment was void because one of the grand jurors appeared as a witness before the grand jury of which he was a member at the same sitting of the court at which the indictment was presented. A grand jury may properly act upon the personal knowledge of any of its members communicated to his fellows under no other sanction than the grand juror's oath. *Commonwealth* v. *Woodward*, 157 Mass. 516.

And there is no impropriety or wrong to the accused in having a grand juror who has personal knowledge as to matters inquired of by his grand jury sworn and testify as a witness. Indeed, there may under our practice be some incidental benefit to the accused in that course, as in that case his name will be found in the list of witnesses which is to be filed of record by the clerk. Pub. Sts. c. 213, § 9.

3. The motion to dismiss, by which alone the two questions above considered were raised, must also have been overruled for the technical reason that neither of the facts alleged in it as avoiding the indictment appeared upon the record of the cause, and so could not be availed of by a motion to dismiss. *Commonwealth* v. *Fredericks*, 119 Mass. 199, 204, and cases cited.

4. As the writing purporting to be a letter written and signed by the defendant was identified as his handwriting, it was competent evidence against him. *Stone* v. *Sanborn*, 104 Mass. 319, 324. *Wiggin* v. *Boston & Albany Railroad*, 120 Mass. 201.

5. The testimony of Annie Dillon was competent to prove the defendant's marriage with her. The testimony of witnesses present at a marriage is competent to prove it; *Commonwealth* v. *Norcross,* 9 Mass. 492; *Commonwealth* v. *Littlejohn,* 15 Mass. 163; and this must be held to include the testimony of either of the contracting parties. *Commonwealth* v. *Dill,* 156 Mass. 226.

6. The attested copy of the record of the marriage of the defendant to Annie Dillon, from the records of the city registrar of Boston, certified to by the assistant registrar, was ad-missible in evidence. The records of town clerks relative to marriages are made by statute *prima facie* evidence in legal proceedings of the facts recorded, and a certificate signed by the clerk is made admissible as evidence of the record. Pub. Sts. c. 32, § 11. See also Pub. Sts. c. 145, § 29. Towns and cities of more than ten thousand inhabitants may choose a person other than the clerk to be registrar, and in that case the provisions concerning clerks apply to the registrar. By St. 1885, c. 266, § 5, the city registrar of Boston has power to appoint his own subordinates. General authority to make ordinances concerning registrars and registration is given by Pub. Sts. c. 32, § 18. By the Revised Ordinances of the City of Boston of 1885, c. 20, § 2, there are allowed to the city registrar for the discharge of the duties of his department three clerks for copying and three for recording. By St. 1892, c. 314, § 2, the city registrar is required to appoint from his subordinates two assistant city registrars, and the same section provides that the certificates and attestations of either assistant city registrar shall have the same force and effect as those of the city registrar. The result is, that the certificate of the assistant city registrar admitted in evidence under the defendant's exception was plainly competent.

7. In proof of the defendant's unlawful marriage charged in the indictment, the government was allowed, against his objection and exception, to put in the testimony of a witness who performed the ceremony, that he was a clergyman in Boston and an ordained minister and pastor of a Congregational church, and that he had been such pastor for many years. The defendant contends that the testimony of this witness was not compe-

tent to prove his own ordination or his authority to bind parties in marriage. " A minister of the Gospel, ordained according to the usage of his denomination, who resides in the Commonwealth and continues to perform the functions of his office," may solemnize marriages. Pub. Sts. c. 145, § 22. Whether the usage of the Congregational denomination requires a record to be made of the ordination of a minister does not appear in this cause, and is not a matter of which we have judicial knowledge. The evidence was at least competent to prove that the witness was *de facto* discharging the office of an ordained minister, and, under the peculiar statute regulating the proof of marriages in court, the testimony so excepted to was all " circumstantial or presumptive evidence " from which the fact of marriage might be inferred, and so was competent under the statute. Pub. Sts. c. 145, § 31.

8. The different requests for rulings founded upon the contention that the defendant was not guilty of polygamy, if at the time he contracted his second marriage he had a *bona fide* and reasonable belief that his first wife was dead, were properly denied. We consider that question to have been settled in this jurisdiction by the decision in *Commonwealth* v. *Mash*, 7 Met. 472, rendered in the year 1844, in which, speaking of a statute substantially like that under which the present defendant was indicted, this court said that " it was not the intention of the law to make the legality of a second marriage, whilst the former husband or wife is in fact living, depend upon ignorance of such absent party's being alive, or even upon an honest belief of such person's death." See Rev. Sts. c. 130, §§ 2, 3 ; Gen. Sts. c. 165, §§ 4, 5 ; Pub. Sts. c. 207, §§ 4, 5. This statement has been since acted upon as a part of our system of law regulating marriages and controlling persons contemplating marriage. See *Commonwealth* v. *Munson*, 127 Mass. 459, 470.

If it ought to be changed the change should come from the Legislature. We therefore decline to treat the defendant's contention as an open question in this Commonwealth. If the reasons which, after much difference of opinion, have led to the final declaration in England that an honest and reasonable belief in the death of the former wife or husband is a good defence to a prosecution for polygamy, should be dealt with here, it should

be by that department of the government which has the law-making power.  See *Regina* v. *Tolson*, 23 Q. B. D. 168; *S. C.* 16 Cox C. C. 629.        *Exceptions overruled.*