## No. 9089.

### SCHELL *v.* THE PEOPLE.

1. CRIMINAL LAW—*Bigamy—Five Years' Absence of Former Spouse —Statute Construed.* Defendant deserted his family, leaving them in Nebraska, in 1903, where they continued at their then residence until 1913. Defendant's second marriage occurred in less than two years after the first wife's departure from the former matrimonial domicile. *Held* that while remaining at such former domicile the first wife was not "absent," within the meaning of the statute (Rev. Stat. sec. 1766), and a conviction was affirmed.

Whether the husband, at the time of the second marriage knew that the first wife was living, or did not know it, was held immaterial.

2. —— *Evidence—Wife against Husband—Competency.* The wife is a competent witness against the husband in a prosecution for bigamy. The offence is a crime against the wife within the meaning of the statute. (Rev. Stat. sec. 7274.)

3. —— *Error—What may be Assigned for Error.* Not an objection to the verification of the information, where no objection was made below.

4. —— *Fair Trial—Time for Argument.* The general rule is that the time to be allowed for the argument of counsel is in the discretion of the presiding judge.

The court found itself unable to say that a limitation of forty minutes was an abuse of discretion.

*Error to Denver District Court, Hon. William D. Wright, Judge.*

Mr. G. K. ANDRUS, Mr. RALPH R. ANDRUS, for plaintiff in error.

Hon. FRED FARRAR, Attorney-General, Mr. FRANK C. WEST, Assistant, Hon. LESLIE E. HUBBARD, Attorney-General, Mr. CHARLES ROACH, Assistant, Miss CLARA RUTH MOZZER, Assistant, for The People.

Opinion by Mr. Justice Allen.

The plaintiff in error, hereinafter designated the defendant, was charged with and convicted of the crime of bigamy under section 1766 R. S. 1908 (Sec. 1894 Mills Ann. Sts. 1912).

Eliminating clauses of the section above cited which are not material to any question presented by the record, the section reads as follows:

"Bigamy consists in the having of two wives or two husbands at one and the same time, knowing that the former husband or wife is still alive. If any person or persons within this state, being married, or who shall hereafter marry, do at any time marry a person or persons, the former husband or wife being alive, the person so offending shall on conviction thereof be punished by a fine not exceeding one thousand dollars and imprisoned in the penitentiary not exceeding two years. * * * Nothing herein contained shall extend to any person or persons whose husband or wife shall have been continually absent from such person or persons for the space of five years prior to the second marriage, and he or she not knowing such husband or wife to be living within that time. * * * "

The first contention made by the plaintiff in error is that there is a total failure of proof to convict the defendant. It is undisputed that the defendant married a second time, while his former wife was living and not divorced from him. It is claimed, however, that the defendant is not guilty, according to the evidence, by reason of the exception contained in the statute. In other words, the defendant claims that his former wife, at the time of his second marriage, had been continually absent from him for the space of five years, and that he did not know her to be

living within that time. The contention thus made requires both an examination of the evidence and an interpretation of the statute, especially since each side takes a different view with reference to what does or may constitute *absence* of the former spouse within the meaning of the exception contained in the bigamy statute.

The evidence shows the following facts: The defendant married his first wife, who is referred to in the record as Mrs. Frances Schell, in Nebraska, in the year 1891. He cohabited and resided with her in Nebraska until some time in the year 1903 at which time he left his family, then consisting of his wife and five children, and came to Denver, Colorado. The defendant's family was then, and had been for more than five years, living in Gothenburg, Nebraska. The wife and children continued to reside in Gothenburg until September 11, 1913, when the wife removed to North Platte, Nebraska, which is located thirty-six miles from Gothenburg. In 1904 Mrs. Frances Schell visited her husband in Denver, but did not establish a matrimonial domicile with him. She did not move to Denver, nor come prepared to stay, but on the occasion mentioned, merely visited the defendant for the space of six days, and then went back to her home in Gothenburg, Nebraska. The defendant visited her at Gothenburg in 1906, which was the last time the parties saw each other until the time of the trial of this case in October, 1916. The defendant married Helen Baber in Denver, on February 20, 1915, which was at a time less than two years from date upon which Mrs. Frances Schell removed from her home in Gothenburg, Nebraska.

The attorney general contends that, under the foregoing facts, the defendant's first wife was not absent from the defendant for the space of five years, within the meaning of the statute. This contention is opposed by the plaintiff in error in his reply brief. It is conceded that the defendant and his first wife lived separate and apart from each other, and each in a different state, for more than

seven years prior to the time of the defendant's second marriage. The theory of the defendant is that the fact thus conceded shows the first wife's absence from him for the space of five years, and brings him within the exception in the statute so far as the same relates to the absence of a former spouse. It becomes necessary, therefore, to pass upon the attorney general's contention, and to determine the meaning of the word "absent" as the same is used in the bigamy statute.

In many reported cases the word "absent," as used in bigamy statutes, has been regarded as having such confined and technical meaning as it has in the rule regarding the presumption of death. We find no case in which the situation is otherwise. "Absent" therefore means being away from the home or place where one has established a residence. 1 C. J. 341; 13 Cyc. 300 (c).

Our statute uses the term in question as a part of the phrase "absent from such person." The word "absent," nevertheless, still has the meaning above mentioned. The bigamy statute in Alabama (Sec. 6390 Code of 1907) employs the expression, "whose former husband or wife had remained absent from him or her for the last five years preceding such second marriage." This expression was under consideration by the supreme court of Alabama in the case of *Parker v. State*, 77 Ala. 47, 54 Am. Rep. 43, and the absence referred to in the statute was regarded as the "absence from which death is presumed," and as "absence from the former place of abode."

In *Parker v. State, supra*, the court said:

"If the defendant left his wife in North Carolina, where they formerly resided, and absented himself from that state, the presumption of her death cannot arise by reason of his absence, or of his having heard nothing from her. * * * A husband cannot create absence by abandoning his family, and then invoke the presumption of innocence to destroy the presumptive proof of continuing life."

In *Hyde Park v. Canton,* 130 Mass, 505, 507, it is said:

"If a man leaves his home and goes into parts unknown, and remains unheard from for the space of seven years, the law authorizes, to those that remain, the presumption of fact that he is dead; but it does not authorize him to presume therefore that any one of those remaining in the place which he left has died."

In the case at bar the evidence shows clearly that the first wife never left the last matrimonial domicile of herself and defendant, or her domicile at Gothenburg, Nebraska, until within two years of the time of defendant's second marriage. While she remained in Gothenburg, she was not absent from him, within the meaning of the statute. It does not matter whether the defendant intended to desert her when he came to Denver or not. In the case of *Parker v. State, supra,* it was not the defendant's desertion that prevented the wife from being absent within the meaning of the statute, but it was the fact that on her part there was no "absence from the former place of abode." The presumption of death arises in the case of a person "who has been absent from his last or usual place of residence." 13 Cyc. 297. At the time the defendant married the second wife, the last or usual place of residence of Frances Schell was at Gothenburg, and she had been absent from that place for a period of less than two years. It is true that she came to Denver, according to the evidence, in 1904, but she never established a settled residence in Denver. She came as a visitor, and remained in Denver only six days. She then went back to Gothenburg, Nebraska, where her home was. The defendant knew this fact, and thereafter knew that Gothenburg continued to be her place of abode. He visited her there in 1906, and corresponded with her at that place as late as 1908. Frances Schell remained in Gothenburg until September, 1913. If any presumption of her death would arise, due to her absence, it would be her absence from Gothenburg, and not her being away from the place where her husband happened to reside. Under the facts in this case, Frances

Schell would naturally be expected to be found, by the defendant as well as by others, at Gothenburg, at the time of defendant's second marriage. In *Robinson v. State*, 6 Ga. App. 696, 65 S. E. 792, 795, the court said that "absence" means absence from the places where she, the first wife, would naturally be expected to be found.

We are of the opinion, therefore, that under the facts of this case the first wife had not been absent from the defendant for the space of five years prior to his second marriage. The defendant did not bring himself within the exception contained in the statute, and it is immaterial to what extent he proved, or the state failed to disprove, that he did not know that his first wife was alive, or that he had good grounds for supposing her to be dead, at the time of his marriage to Helen Baber.

The prevailing view in the United States is that it is the clear intent of the statutes that one who marries within the period designated by the statute shall do so at his peril. 7 C. J. 1164; 3 R. C. L. 801, sec. 9; *State v. Ackerly*, 79 Vt. 69, 64 Atl. 450, 118 Am. St. Rep. 942, 8 Ann. Cas. 1103; *Commonwealth v. Hayden*, 163 Mass. 453, 40 N. E. 846, 47 Am. St. Rep. 468, 28 L. R. A. 318; *Cornett v. Com.*, 134 Ky. 613, 121 S. W. 424, 21 A. & E. Ann. Cas. 399.

The view above taken by us dispenses with the necessity for any discussion of the instructions requested or given. In that matter there was no error, prejudicial to the defendant, committed by the trial court.

It is urged that the court erred in permitting the defendant's first wife to testify as a witness against him. Upon this point the plaintiff in error relies upon section 7274 R. S. 1908 (sec. 8072 Mills Ann. Sts. 1912), which provides, among other things, that a wife shall not be examined for or against her husband without his consent, except it be in "a criminal action or proceeding for a crime committed by one against the other." It is claimed that the alleged bigamy of the defendant cannot be a crime committed against the wife, within the meaning of the statute

above cited. There is a conflict of authority on the question whether or not bigamy is a crime committed ·by one spouse against the other. 3 R. C. L. 812, sec. 26; 40 Cyc. 2221. The statute above mentioned was under consideration by this court in *Dill v. People,* 19 Colo. 469, 481, 36 Pac. 229, 41 Am. St. 254. It was there said:

"All crimes are crimes against the public * * * But crimes directly affecting particular persons or individuals are uniformly considered crimes against such persons or individuals. * * *

"Our statute does not limit the right of the husband or wife to testify to criminal prosecutions for crimes involving personal violence, either actual or constructive; the language is unqualified that the husband or wife may testify against the other 'in a criminal action or proceeding for a crime committed by one against the other.' This language is broad enough to include any crime, whether of violence to the person, or other crime committed by the husband or wife directly affecting the other."

It was held in *Dill v. People, supra,* that the making of a false affidavit by the husband in a divorce suit against his wife, for the purpose of procuring a constructive service of summons, was a crime committed against the wife, within the meaning of the statute in question. In arriving at its conclusion the court used language and reasoning which is applicable to the crime of bigamy as well as that of perjury, and among other things, said:

"Since some private wrong or injury is included in every crime, it is evident that the word *crime* in that clause of the statute which permits the husband or wife to testify against the other in a 'criminal action or proceeding for a *crime* committed by one against the other,' means the private wrong or injury included in such public crime. The word must have such meaning, or the statute is meaningless. It follows that a wife is competent to testify against her husband in a criminal action or proceeding whenever she is the individual particularly and directly injured or affected by the crime for which he is being prosecuted."

We are of the opinion that the statute in question was correctly interpreted in the opinion in the Dill case, and it would be contrary to such interpretation now to hold that bigamy is not a crime against the wife within the meaning of the statute. We therefore adopt the rule laid down in *State v. Sloan*, 55 Iowa, 219, 7 N. W. 516, where the court said: "In our opinion, if the defendant is guilty of bigamy, he committed a crime against his wife. We think she is a competent witness. The decision in that case was followed in *State v. Hughes*, 58 Iowa 165, 11 N. W. 706. These Iowa decisions were followed in Nebraska. *Hills v. State*, 61 Nebr. 589, 85 N. W. 836, 57 L. R. A. 155.

For the reasons above named we hold that the defendant's first wife was a competent witness against him, and that the trial court did not err in allowing the wife to testify in behalf of the state in this case.

In one of the assignments of error, it is claimed that the information was not properly verified. No objection to the information, or to the form of its verification, or to the alleged absence of a proper verification, was made at any stage of the proceedings in the trial court. Such objection cannot, therefore, be considered at this time. *Bergdahl v. People*, 27 Colo. 302, 307, 61 Pac. 228; *Leffey v. People*, 55 Colo. 575, 136 Pac. 1031.

The plaintiff in error contends that "the court erred in limiting the defendant's counsel to forty minutes to argue his case to the jury." The general rule is that the limitation of the time for argument by the counsel for either side is in the discretion of the trial court. 12 Cyc. 568. Considering the amount and character of the testimony taken, the number of witnesses, and other circumstances of the case, we cannot say that the trial court abused its discretion in this matter.

The plaintiff in error calls attention to the fact that the information alleged that the defendant at the time of his second marriage knew that his first wife was living. Such an allegation could have been omitted without affect-

ing the charge against the accused. 7 C. J. 1166, sec. 29. It was surplusage. 22 Cyc. 370, c. It was not necessary for the state to prove such allegation. 22 Cyc. 448. The record shows no error based on the allegation or proof in question.

The record shows no reversible error, and the judgment is therefore affirmed.

*Affirmed.*

Chief Justice Hill and Mr. Justice Bailey concur.