DILL, PLAINTIFF IN ERROR, v. THE PEOPLE, DEFENDANT
IN ERROR.

1. TIME—DATE—VARIANCE.

In criminal pleading the time at which an offense is charged to have been committed is not material, unless time be of the essence or gist of the offense; but where an indictment for perjury is based upon a written instrument—a matter of record—set out *in hæc verba* in the indictment, and the instrument offered in evidence bears a different date from the instrument described in the indictment, the date of such instrument is matter of description and the variance is material.

2. AUTREFOIS ACQUIT.

In determining whether or not a plea of *autrefois acquit* is sufficient in law, the following may generally be regarded as the proper test: Was the matter set out in the second indictment admissible as evidence under the first, and could a conviction have been properly maintained upon such evidence ? If yes, then the plea is sufficient; otherwise it is not.

3. CHALLENGE OF JURORS.

The Act of 1891 (Session Laws, p. 251) was intended to supersede the Act of 1889 (Mills An. Stats. § 2595) in respect to challenges on the ground that jurors had served in the county or district court within the year next preceding; such jurors are not liable to challenge for cause unless summoned from the bystanders on open venire.

4. WITNESSES—HUSBAND AND WIFE.

Where a husband is indicted for willful and corrupt perjury in making a false affidavit in a suit for divorce against his wife, the wife is a competent witness for the state on the trial of such indictment.

*Error to the District Court of Arapahoe County.*

INDICTMENT and conviction for the crime of perjury. Defendant Dill brings the cause to this court by writ of error.

Mr. H. W. SPANGLER and Mr. L. K. PRATT, for plaintiff in error.

Mr. EUGENE ENGLEY, attorney general, and Mr. H. T. SALE, for the People.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

1. The sustaining of the demurrer to defendant's plea of *autrefois acquit* is assigned for error.

It appears that in November, 1890, Sanford B. Dill instituted an action in the county court of Arapahoe county to procure a divorce from his wife. In such action defendant made and filed an affidavit as follows:

"STATE OF COLORADO, ⎫
  County of Arapahoe, ⎬ ss.
               ⎭

                   In the County Court thereof.

Sanford B. Dill, Plaintiff, ⎫
        v. ⎬       AFFIDAVIT.
Susan A. Dill, Defendant. ⎭

"Sanford B. Dill, being duly sworn says that he is the plaintiff in the above entitled action and that he has filed in

said action a complaint against Susan A. Dill, the defendant, to procure a divorce:

"That the defendant (meaning the said Susan A. Dill), does not reside in the state of Colorado, and her postoffice address is unknown to this affiant.

"SANFORD B. DILL, Plaintiff.

"Subscribed and sworn to before me, this 29th day of November, 1890. My commission expires Sept. 20, 1894.

[SEAL]     E. E. SCHLOSSER, Notary Public."

The indictment upon which Dill was convicted sets out the foregoing affidavit *in hæc verba*, and charges, among other things, that defendant committed willful and corrupt perjury in making oath thereto, in that he did then and there know the postoffice address of his said wife Susan A. Dill.

To this indictment defendant interposed a plea of *autrefois acquit*. The plea alleged, *inter alia*, that at a former term of the same court defendant had been indicted and tried upon another indictment for the same crime of perjury, and that upon such trial he was acquitted. But the record of the first cause, which is made a part of the plea, shows further that in the first indictment the affidavit was also set out *in hæc verba*, in the first count, and that the date was stated as the "28th day of November, 1890," instead of the "29th day of November, 1890." The prosecution being required on the first trial, upon defendant's motion, to elect upon which count the trial should proceed, elected to proceed upon the first count. The record further shows that in the midst of the trial, "it appearing to the court that there is a variance between the proof offered and the allegations of this said indictment, and the said jurors being duly instructed by the court, without retiring from their seats, upon their oaths do say: 'We, the jury, find the defendant not guilty as charged in the first count of this indictment.' "

The demurrer was an admission of all the material facts well stated in the plea. The plea shows that defendant had been in jeopardy once under an indictment charging him with having committed perjury in making oath to an affidavit dated

the "28th day of November, 1890." But the plea does not show that he had been in jeopardy for making oath to an affidavit dated the "29th day of November, 1890." It may have been true that defendant did not know his wife's address on November 28, 1890, and yet also true that he did know her address the next day. But there is a further difficulty to be considered. It is a general rule in criminal pleading that the time at which an offense is charged to have been committed is not material, unless time be of the essence or gist of the offense. *Commonwealth v. Monahan,* 9 Gray, 119.

From the averments of the plea including the record of the first trial, it is obvious that the variance whereby defendant obtained a verdict did not arise from a mere difference between the allegations of the indictment and the proof offered, as to the time when the offense was committed; the variance consisted in matter of description. By the first indictment defendant was charged with having committed the crime of perjury by making oath to a certain sworn instrument of writing bearing a particular date; the proof offered was an instrument bearing a different date. There was a variance, therefore, in the description of the written instrument upon which the charge of perjury was based; besides, such written instrument was matter of record in the divorce suit; it was essential to the jurisdiction of the court in that suit. The variance, therefore, must be held to be material and substantial as a description of the particular offense. Such particular description was, perhaps, unnecessary; but whether a less particular description would have been sufficient we do not determine; the description of the affidavit having been made *in hæc verba,* it was necessary to prove it as made in order to sustain a conviction under the particular count of the indictment tried and determined. *State v. Ammons,* 3 Murphey (N. C.) 123.

2. In determining whether or not a plea of *autrefois acquit* is sufficient in law in a case of this kind, the following may generally be regarded as the proper test: Was the matter set out in the second indictment admissible as evidence under

the first, and could a conviction have been properly maintained upon such evidence? If yes, then the plea is sufficient; otherwise it is not.

The affidavits set out *in hæc verba* in the indictments respectively were variant in description; the variance was material. The allegations of the two indictments clearly indicate two different affidavits, though in fact there may have been but one. Each of the affidavits bears a single date; such date cannot, therefore, be both November 28 and November 29. Therefore, the affidavit particularly described in the second indictment was not admissible under the first indictment. The variance did not arise from the difference in *time* as to the alleged commission of the offense, but from a difference in *date* of a writing—a matter of record—particularly described and relied upon to sustain the conviction. The court did not err in sustaining the demurrer to the plea of *autrefois acquit*.

The opinion in the case of *The State v. Blanchard*, 74 Ia. 628, is relied on as sustaining the plea in this case. It seems to have some bearing contrary to our conclusion. But the instrument in the Iowa case was not a matter of record; and the question decided did not arise upon a plea of *autrefois acquit*. Besides, as the opinion of the court shows, the case was submitted and determined " without argument by counsel for either party." The opinion cites no authorities upon the precise question raised in this case. Upon careful consideration it is clear that the current of authority sustains the views we have expressed. 1 Greenleaf's Ev. §§ 55–65; 1 Bishop's Cr. Law, § 1052; 1 Wharton's Crim. Ev. § 103; 1 Archbold's Cr. Prac. 375 and notes; *U. S. v. McNeal*, 1 Gallison, 387; *U. S. v. Bowman*, 2 Wash. C. C. 328; *U. S. v. Denicke*, 35 Fed. Rep. 407; *People v. Hughes*, 41 Cala. 234; *State v. Porter*, 2 Hill (S. C.) 610; *Keator v. The People*, 32 Mich. 487; *State v. Clark*, 2 Tyler (Vt.) 282.

3. Certain jurors were challenged on the ground that they had served as jurors in the county or district court of the county within the year next preceding. The challenges were

based upon section 2595, 2 Mills' An. Stats. This statute as amended was passed in 1889. It provided that any person who had served as a juror in any district or county court at any time within the year next preceding, should be liable to challenge for cause. But subsequently an act was passed providing for the selection and qualification of jurors, and to repeal all acts and parts of acts in conflict therewith. Section 4 of the latter act provides in detail for the impaneling of jurors ; it provides, among other things, as follows :

" Whenever it shall be necessary to summon talesmen, the court, in its discretion, shall direct that they be drawn from said box, or summoned from the bystanders, *provided* that either party may show cause, why talesmen should not be summoned from the bystanders, or may issue an open venire as heretofore practiced, and, in every case, the *venire facias* shall be returnable as the court shall direct, *provided it shall be ground for challenge to any person so summoned from the bystanders on an open venire, if he shall have served as a juror either in a regular panel or as a talesman in any court of record within one year then last past.*" Session Laws, 1891, p. 251.

Section 2595, above referred to, is not expressly repealed by the act of 1891 ; but from the scope and character of the latter act there can be no doubt it was intended to supersede section 2595 in respect to the ground of challenge above stated. Unless the statute of 1891 has this effect, it has no effect—a construction to be avoided if possible. The examination of the challenged jurors did not disclose that either of them was *summoned from the bystanders upon open venire* to try this case ; hence, they were not liable to the challenge interposed.

One juror mentioned in the assignment of errors was challenged on the ground that he had formed an opinion. The assignment is not insisted upon in argument before this court, nor did his examination show that he was disqualified by reason of having formed or expressed an opinion as to the guilt or innocence of the accused.

4. The court, against the objection of defendant, ordered that Susan A. Dill, wife of defendant, might testify as a witness in behalf of the state. This ruling is assigned for error.

Mrs. Dill testified that she was married to defendant in 1874; that her husband had come to Colorado; and that on November 10, 1890, she left Chicago and came to Pueblo, Colorado, where she found him living with another woman; that she and her husband came to Denver on November 18th; that after four or five days her husband said he could not find work and so insisted upon her returning to Chicago; that on November 23, 1890, he took her to the depot, put her on the car, stayed with her till the train started, and then bade her good-by, saying he would be home by Christmas.

The witness stated details and circumstances usually accompanying such occurrences. She further testified that her husband knew that she was going to her daughter's at *No.* 18 *Cypress street, Chicago, Illinois, to stay until he should return to her.* That she wrote to him within a day or two after she reached her destination, and that within the month following he wrote to her frequently at said postoffice address. His letters to her were identified and read in evidence; they show him to be a thoroughly bad man.

The statute of this state provides that all persons may be witnesses with certain exceptions; among the exceptions are the following:

" A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor shall either during the marriage or afterward be, without the consent of the other, examined as to any communication made by one to the other during the marriage; *but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other.*" Gen. Stats. 1883, p. 1062, § 3649.

The contention in behalf of the state is that defendant, in making the false affidavit in the divorce suit against his wife, committed a crime against her; that the crime was a wrong

and injury to her individually; that it violated her rights and privileges in the divorce suit, and otherwise affected her personal interests; and, hence, that she was a competent witness against her husband in a prosecution for said crime.

Counsel for defendant contends that a wife cannot testify against her husband without his consent except in a case where he is charged with the commission of actual or constructive violence against her person. Counsel state their views as follows:

" The wrong committed by a person in making a false affidavit in a divorce suit, is one against the public administration of justice, and while in its effect it may fall more heavily upon one person than another, yet it does so only in a general sense and with relation to relative rights, and is not an invasion of the rights of personal security."

The general rule at common law was that neither husband nor wife was a competent witness for or against the other. But the rule had this exception, that if either was prosecuted for a felonious crime or high misdemeanor involving violence to the person of the other, the party against whom the crime was committed was a competent witness in behalf of the state.

In *Cotton v. The State*, 62 Ala. 12, a married woman and her paramour were jointly indicted and tried for living in adultery. It was held that the husband was incompetent to testify on the trial against either of them. The decision appears to have been based upon the common law; it does not refer to any statute upon the subject.

In *Commonwealth v. Sapp*, 14 S. W. Rep. (Ky.) 834, defendant was indicted for an attempt to poison his wife. It was held that the wife was a competent witness against him to prove that she saw him sprinkle some substance on food intended for her; the food thus prepared was produced at the trial and proved to contain arsenic.

The statute of Texas provided that, " The husband and wife may in all criminal actions be witnesses for each other, but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against

the other." Under this statute it was held that the wife was not a competent witness against the husband in a prosecution against him for incest.

*The State v. Sloan*, 55 Ia. 219, was a case in which the defendant was indicted for bigamy. The statute provided that neither the husband nor wife shall be a witness against the other, *except in a criminal proceeding for a crime committed by one against the other*. The court said: " In our opinion, if the defendant is guilty of bigamy, he committed a crime against his wife. We think that she is a competent witness."

In *State v. Hughes*, 58 Ia. 165, the defendant was indicted for bigamy. It was held that the oral testimony of the lawful wife was competent in behalf of the state for the purpose of proving a marriage between herself and defendant.

In Nebraska the statute provided that " The husband can in no case be a witness against the wife nor the wife against the husband except in a criminal proceeding for a crime committed by the one against the other; but they may, in all criminal prosecutions, be witnesses for each other." In *Lord v. The State*, 17 Neb. 526, upon the trial of an indictment against a man for deserting his wife and living and cohabiting with another woman in a state of adultery, the wife was held to be a competent witness against him.

The case of *Bassett v. United States*, 137 U. S. 496, is much relied on by counsel for defendant. In that case the court had under consideration a conviction for polygamy under the laws of Utah. The civil code of that territory was the same as our statute in respect to the examination of husbands and wives as witnesses against each other, except that our statute applies to both civil and criminal proceedings, but the criminal code of Utah was as follows:

" Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife are competent witnesses for or against each other in a criminal action or proceeding to which one or both are parties."

On review by the United States supreme court it was held that the wife was not a competent witness. The decision

was fully warranted by the criminal code of Utah, and so the opinion of Mr. Justice Brewer declares; but he expressed the further view that the wife was an incompetent witness even under the terms of the civil code.

That the making of the affidavit, if false, was a crime, is conceded. But it is contended by defendant's counsel that it was a crime against the state—a crime against society—a public crime, but not a crime against the wife.

. All crimes are crimes against the public; the first element of a crime as stated in our criminal code is, that it "consists in a violation of a public law." Gen. Stats., p. 232. But crimes directly affecting particular persons or individuals are uniformly considered crimes against such persons or individuals. For example : The murderer commits a crime against the person whose life he destroys; the thief commits a crime against the person whose property he steals; the libeler commits a crime against the person whose good name and fame he destroys or injures; and yet all these several classes of crimes are crimes against the public.

Blackstone says: "In all cases the crime includes an injury ; every public offense is also a private wrong, and somewhat more; it affects the individual and it likewise affects the community." 4 Bl. Com., p. 4.

From a review of the decisions it appears that there is some conflict in respect to the question as to when a husband or wife may testify against the other, under statutes like ours. In Texas a late decision seems to limit the wife's right to testify against her husband to cases of violence against her person as at common law. On the other hand, the Iowa and Nebraska decisions under a statute like ours extend the right to the wife to testify against her husband in any criminal action or proceeding for any crime committed against her, and bigamy and adultery are held to be crimes against the lawful wife.

Our statute does not limit the right of the husband or wife to testify to criminal prosecutions for crimes involving personal violence, either actual or constructive ; the language

is unqualified that the husband or wife may testify against the other "in a criminal action or proceeding for a crime committed by one against the other." This language is broad enough to include any crime, whether of violence to the person, or other crime committed by the husband or wife directly affecting the other.

Since some private wrong or injury is included in every crime, it is evident that the word *crime* in that clause of the statute which permits the husband or wife to testify against the other in a "criminal action or proceeding for a *crime* committed by one against the other," means the private wrong or injury included in such public crime. The word must have such meaning, or the statute is meaningless. It follows that a wife is competent to testify against her husband in a criminal action or proceeding whenever she is the individual particularly and directly injured or affected by the crime for which he is being prosecuted.

In the case at bar, defendant was charged with committing the crime of perjury in an action for divorce *against* his wife. The purpose of the affidavit was to aid him in his suit *against* her; it was to give the court jurisdiction of the cause without personal service of process upon his wife; and the object of that portion of the affidavit of which perjury is predicated was to enable him to give the court jurisdiction without mailing a copy of the summons to his wife. If in making such affidavit defendant committed perjury, the effect of his crime was to diminish the wife's chances of obtaining notice of the divorce suit, and thus deprive her of the privilege of making any defense. It is clear, therefore, that she was the particular individual whose private rights and interests would be affected by the crime. It is true, the crime of perjury committed in such a case was a crime against the public administration of justice; the public are deeply interested—every good citizen is interested—in punishing and preventing the crime of perjury; but the perjury in this case was calculated to inflict upon the wife of defendant a direct private injury to her individual rights and interests. That the crime was

against her, in the sense in which every crime is an injury to a particular individual, cannot be doubted.   In the first place, the perjury was liable to deprive her of the right of making defense ; if deprived of that right, she might be wrongfully deprived of her husband, and of her right to support from his estate or from his labor; besides, if divorced, she would be subjected to the stigma of having been false to her marital vows.   A decree of divorce, in the estimation of all good people, causes ignominy and disgrace to fall, more or less heavily according to the nature of the case, upon the party adjudged to be in the wrong.   The rule of the common law that a wife may testify against her husband in a case where he is charged with a crime of violence against her person rests, it is said, upon the principle of affording her the means of self-protection.   In the ruder period in which the common law took its rise, life and limb were principally regarded; property was also esteemed worthy of protection, but the property rights of the wife were greatly restricted, and her personal status was almost entirely merged in that of her husband.   In the present age there have been great changes ; other than tangible things are more highly esteemed ; should it, therefore, be deemed strange that modern legislation should give the wife the means of protecting that which is often dearer to her than life, liberty, or property ?

> "Who steals my purse steals trash;
> But he that filches from me my good name,
> Robs me of that which not enriches him,
> And makes me poor indeed."

The reasoning of the learned justice in the *Bassett case, supra*, though well expressed, does not shake our conclusion in this case.   Even if it may be said that the offenses of adultery, incest, bigamy, and polygamy, committed by a husband, are not crimes against the wife, for the reason that they imply no fault on her part and inflict no direct injury to her absolute rights as an individual (points we do not decide), still it cannot be maintained that a husband does not commit a crime against his wife when in a suit for divorce

he commits the crime of perjury for the purpose of having her adjudged guilty of a matrimonial offense, so as to obtain a decree *against* her, and thus deprive her of property rights, besides fastening a stigma upon her character.

In this case defendant instituted the action *against* his wife, he made oath to the false affidavit in the cause *against* her; he did this for the purpose of procuring constructive service of summons *against* her. The perjury committed in making such affidavit was a crime against the public; but if it was not also a crime *against* the wife, whose name and rights were assailed, where shall we look for the private wrong or injury included in such public crime? If not the wife, then what individual was particularly affected by such crime?

We are not prepared to believe that the statute under consideration was intended to be declaratory of the common law merely. In this connection it is proper to notice again the tendency of modern legislation in this state. For many years it has been the policy of our people to enlarge the rights of married women, and to give them greater protection in every direction, until at last they have been fully enfranchised. So, also, the same tendency marks the legislation upon the subject of witnesses; the rule as to competency has been gradually extended and broadened until very few common law restrictions remain.

In our opinion, the trial court did not err in allowing the wife to testify in behalf of the state in this case. This disposes of the matters presented to this court upon this review. No substantial error appearing in the record, the judgment of the district court is affirmed.

*Affirmed.*