Norman W. CHAMBERLAIN, Appellant (Defendant below),

v.

STATE of Wyoming, Appellee (Plaintiff below).

No. 2894.

Supreme Court of Wyoming.

Jan. 5, 1960.

Frank B. O'Mahoney of O'Mahoney & Gorrell, Worland, Thomas M. McKinney, Basin, for appellant.

Thomas O. Miller, Atty. Gen., and Ralph M. Kirsch, Special Asst. Atty. Gen., and W. M. Haight, Asst. Atty. Gen., Harold Joffe, County and Pros. Atty., Worland, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Upon the prosecution of a father for the statutory rape of his thirteen-year-old minor child, the wife was permitted to testify against her husband in rebuttal. A jury convicted the defendant and he was sentenced to the penitentiary. The defendant appeals, relying upon the single ground there was prejudicial error in admitting testimony of his wife.

In the State's case in chief, the testimony of the child showed the defendant had criminally assaulted her on other occasions prior to the attack upon which the criminal complaint was based; on the night of the alleged assault she was sleeping in her bedroom with her mother; the defendant came into the room, took her mother from the bed and into an adjoining room; later the defendant returned to the child's room and criminally assaulted her; after the criminal act the defendant, in the presence of the assaulted child, told the mother he "broke the rubber"; defendant "still seemed frightened and fixed a douche and came and got me"; defendant took the child into the bathroom; and proceeded to administer a douche to the child. Some of this testimony was corroborated by the ten-year old sister, including her testimony that the defendant told his wife about the broken rubber.

When defendant testified in his own behalf and counsel asked him if he knew of any reason why the assaulted child was there testifying against him, he replied:

"My wife, she wants to get rid of me; that is why she brought her over here. She had to have something to work with, so she got her to swear to it."

He also testified his wife charged him with having carnal knowledge of their daughter but that she afterwards told him she made a mistake in accusing him. He also denied going into the child's bedroom where his wife and child were in bed, and denied he had conversation with his wife about the douche incident.

On his cross-examination, defendant identified a letter written by him to his wife after he was first accused of the crime. Over his objection, the letter was admitted in evidence. It reads as follows:

"Put this with the rest you dam (sic) hore (sic) and another thing at least I kept you from geting (sic) pregnent (sic) I did not expose you to every body like you are trying to me. I just wish I had it to do again I would give you some of what you are trying to me. You have a lot to talk about you are a dam (sic) foll [fool] as far as I can see at least I did not run and tell every one I had intercose (sic) with you. Your Folks will get a letter to (sic) as the Kind of girl thay (sic) raised."

When the wife was called in rebuttal, defendant objected to her giving any testimony on the ground that to permit her to do so would violate the provisions of § 3-2605, W.C.S.1945, now § 1-142, W.S.1957. After a discussion relative to the wife's competency, the objection was overruled on two grounds: (1) Because the offense was against the wife and (2) because the defendant had waived his right to claim the privilege of the statute by his testimony. The court said in part:

"* * * it would be incredible to reach a result in a case of this kind, where the husband has the absolute liberty to testify to anything he wants to testify to, while the law seals the lips of his wife. I don't think that is the law. It is not for the Court to determine the truth or falsity of the testimony, and I am not doing that. To me, it would seem incredible to permit the Defendant to testify as to transactions with his wife, and then refuse to let the wife make any answer. I think she has

that right; and I think it is good law. So you can put her on the stand. She will be permitted to testify in this case, covering all subjects Defendant testified to concerning her. * * * "

After so stating, the court also said the wife would be strictly confined to rebuttal evidence. Except in minor respects the testimony of the wife given in her direct examination stayed within the limits set by the court. However, on her cross-examination, defense counsel inquired and she gave answers which paralleled to a large extent the testimony of the injured child, and showed that when her husband was administering the douche to the child in the bathroom she, the wife, was watching them. Also when asked by defense counsel if there was any question in her mind that her husband had carnal knowledge of the daughter, she replied unequivocally, "He absolutely did".

Section 1–142, W.S.1957, reads as follows:

"In no case shall the husband or wife be a witness against the other, except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceeding by one or against the other, or an action brought by the husband for criminal conversation with or seduction of his wife, or in an action brought by either husband or wife for the alienation of the other's affections; but they may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist."

The only other statute we have which touches the subject is found in § 1–139, W.S.1957, formerly § 3–2602, W.C.S.1945, the applicable portion of which is as follows:

"The following persons shall not testify in certain respects:

\* \* \* \* \* \*

3. Husband or wife, except as provided in section 3681 [§ 1–142]. * * "

The wording of the governing statute, like that of similar statutes in many other jurisdictions, needs interpretation. Legalistically speaking, a crime is never "committed by one against the other". Crimes are committed against the state. Offenses against an individual are civil wrongs. See Wilkinson v. People, 86 Colo. 406, 282 P. 257; Dill v. People, 19 Colo. 469, 36 P. 229, 41 Am.St.Rep. 254. With this distinction in mind, are we to interpret the word "crime" to mean "wrong" in the context wherein it is used? If it is logical to conclude the statute permits a wife to testify when she suffers wrong, even though she is not the physical victim of a criminal act, then the admission of her testimony in this case was not error. So we inquire what, if any, wrong did the mother suffer stemming from the rape of her daughter.

Each of the states, territories and possessions of our country, as well as the Philippine Islands, now has statutes relating to the competency of a spouse to testify against the other in criminal cases, but they are not uniform. In attempting to make some general classification of these laws, we find statutes of several jurisdictions making a spouse competent, but not compellable, to testify; a few states where they may be compelled to testify; and a large majority where such testimony is permissible when the accused is charged with violence or a crime against the other spouse. Within the last group are some states which also allow the testimony when the crime, violence or injury is committed against a minor child of the witness. It also appears that about one-fourth of the jurisdictions have statutes which read substantially the same as our own statute. See 2 Wigmore on Evidence, 3d ed., § 488 and 1957 Supp.

Not infrequently it is said that certain of these statutes, particularly those which permit the testimony in prosecutions of a spouse charged with violence or a crime against the other, are merely declaratory of the common law exception to the general rule which renders the spouse incompetent to testify. So in People v. Langtree, 64 Cal. 256, 30 P. 813, 814, it was said, "On this, as on nearly every other subject to which the Codes relate, they are simply declaratory of

what the law would be if there were no Codes", and many old decisions are cited to justify the statement. To the same effect are a few later California cases, as well as some from other jurisdictions, including the courts of the United States. See Bassett v. United States, 137 U.S. 496, 11 S.Ct. 165, 34 L.Ed. 762, 765.

Notwithstanding these holdings, we are more disposed to believe that inasmuch as our legislature elected to discard the usual common law exception of "violence against the person", and in lieu thereof used the broader phrase "for a crime committed by one against the other", it is our duty to explore to the fullest what purpose it had in mind when it made the change.

In 97 C.J.S. Witnesses § 101, p. 504, it is said:

"Under statutory exceptions permitting husband or wife to testify against the other in a prosecution for a crime committed by one against the other, the right of one spouse to testify against the other exists in cases of violence against the person, and has by some authorities been limited to such offenses, such authorities construing statutes of this character as merely declaratory of the common law, although other authorities take the view that under such statutory exception a wife is competent to testify against her husband in a prosecution for any crime of his by which she is particularly and directly injured or affected, the statute being construed as rendering one spouse competent against the other in the latter's prosecution for any offense against the marriage relation or status, although holding one spouse incompetent to testify against the other where the crime is clearly one not against the person or property of the other, or even against the marital status.

"Statutes permitting either spouse to testify against the other in all cases in which an injury has been done by either against the person or property of either are not limited to cases wherein there is a physical injury to the person of a spouse, but include prosecutions for crimes especially injuring one spouse, although involving no physical injury."

See Wilkinson v. People, 86 Colo. 406, 282 P. 257; Hunter v. State, 10 Okl.Cr. 119, 134 P. 1134, 1137, L.R.A.1915A, 564, Ann. Cas.1916A, 612; Murphy v. State, 171 Ark. 620, 286 S.W. 871, 48 A.L.R. 1189, and People v. Tidwell, 61 Cal.App.2d 58, 141 P.2d 969, 971.

People v. Tidwell, supra, was a case where the original statute had limited the exception to cases of personal violence upon the spouse, but the amended statute extended the exception to include crimes committed by one against the person or property of the other. The court said the amendatory statute "shows the intention of the legislature to broaden the exceptions". To hold that our statute is not merely declaratory of the common law, but rather expands the exception to include all cases where crimes, i. e., injuries or wrongs have been committed against the other, would be of the same tenor and in the same vein as the California decision last above mentioned.

In 8 Wigmore on Evidence, 3d ed., § 2239, p. 251, commenting on the exception to the rule of exclusion which was recognized at common law, it is said:

"* * * Just how far the concession went, in concrete cases, was never precisely settled. It was given varying definition at different times; it certainly extended to causes involving corporal violence to the wife; and it certainly did not extend to all wrongs done to the wife. In modern statutes the *spirit* of the exception has usually been invoked to establish the exception for both husband and wife in all causes involving a 'crime against the other', or a *'personal wrong'*." (Emphasis supplied.)

█ If all our legislature intended was simply to declare the common law exception of "cases involving corporal violence", it

could unmistakably have done so by using those words. That it intended something more is made plain because the legislature used the broader phrase "crimes against the other". A "crime" against the other, in legislative understanding, means, we think, as does Wigmore, nothing more nor less than a "wrong" against the other. Yet, as was suggested in Cargill v. State, 25 Okl.Cr. 314, 220 P. 64, 67, 35 A.L.R. 133, a middle ground might well be taken. In that case the court said:

"* * * The rule that the injury must amount to a physical wrong upon the person is too narrow; and the rule that any offense remotely or indirectly affecting domestic harmony comes within the exception is too broad. The better rule is that, when an offense directly attacks or directly and vitally impairs the conjugal relation, it comes within the exception to the statute that one shall not be a witness against the other except in a criminal prosecution for a crime committed one against the other. In this sense the commission of rape by a husband upon a third person is not a crime against the wife within the meaning of our statute. * * *"

With this statement we can agree. However, where the rape is of the child of the wife, that offense is within the "better rule" for it not only vitally impairs the conjugal relation but comes specifically within the exception named in our statute, because it has caused a special wrong to the wife and has "particularly and directly" affected her in a manner other than that suffered by the public in general.

The criminal violation of her minor child undoubtedly caused as great or, more likely, even greater pain and suffering to the mother than would have been caused by any act of physical violence inflicted upon the wife's own person. We will not say that the degree of mental misery to the wife in this case, which was occasioned by the vicious and depraved act of her husband, allegedly committed just out of her immediate presence, with its consequences paraded in front of her very eyes, was a lesser wrong than any physical wrong inflicted upon her own body, but the covering quality of our legislative exception lies in the special, particular and personal nature of the wrong to the mother.

If seeking to follow the "spirit" of legislative purpose means anything, and if we would not kill the spirit of the act by a too specious adherence to its letter, we must hold, as we do, that the crime for which the defendant was prosecuted was one of such special wrong and such a personal offense against his wife as permitted her to testify against him.

In 8 Wigmore on Evidence, 3d ed., it is stated in § 2239, p. 258:

"* * * By a liberal view, *any injury to a spouse's child* is a wrong to the spouse, and his or her testimony becomes admissible against the other.

"At common law, in the early practice, the notion of an injury to the wife was not regarded as including much more than those corporal brutalities which satisfied most gross and elementary conceptions of wrong. But as times have gone on, more refined distinctions have been countenanced; especially under the statutory exceptions for 'crimes against the other', it has become possible for the Courts to take a broader view *for sexual offenses by the spouse with a third person.*" (Emphasis is that of Wigmore.)

Whether the conclusion we reach is justly called a "liberal view" or not is of little importance. What counts is that we feel this interpretation of our statute accords itself with what we believe was the true purpose prompting our legislature to expand the exception which was made at common law.

Had the mother in this case defended her child against her attacker and even found it necessary to take her husband's life in the child's defense, the law would have forgiven and excused her violent act. That accords with our idea of justice. Yet appellant would have us make a decision the effect of which would leave our laws mean-

ing that a wife might go to the extreme of taking life to prevent this crime, but her testimony may not be used to insure its punishment.

A satisfactory answer to such a contention seems to us to be found in what was said in the concurring opinion of Mr. Justice Stewart in Hawkins v. United States, 358 U.S. 74, 81, 82, 79 S.Ct. 136, 140, 3 L.Ed. 2d 125:

> "Any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice. When such a rule is the product of a conceptualism long ago discarded, is universally critized by scholars, and has been qualified or abandoned in many jurisdictions, it should receive the most careful scrutiny. Surely 'reason and experience' require that we do more than indulge in mere assumptions, perhaps naive assumptions, as to the importance of this ancient rule to the interests of domestic tranquillity."

And we might add that such a translation of our law as that contended for would often give effective license to a degenerate father to wantonly abuse his minor child, even in the very presence of his wife, and then escape punishment in those cases where, because of young age or insufficient understanding, the injured child could not testify to the wrong inflicted upon it.

While the trial court also expressed the view that our statute enlarged the exception to the common law rule, so as to permit the wife to testify in the present case, it also held that any right the defendant might have to invoke the statutory rule of incompetency was waived by his testifying relative to transactions with his wife and subjects concerning her. Evidently the court felt that when defendant testified his wife had charged him with having carnal knowledge of their daughter; that she told him she made a mistake in accusing him; denied he went into the bedroom where his wife and child were in bed, and denied he had conversation with his wife about the douche incident, this testimony, together with his

accusation that his wife prompted his child's evidence against him, should unseal his spouse's lips with respect to these matters. While there appears to be merit in this theory, the appellee has not cited any authorities in support. However, our own research has produced some authority relative to waiver of privilege, although for the most part the cases we have found are those dealing with waiver of privilege against giving testimony concerning confidential communications.

United States v. Krulewitch, 2 Cir., 145 F.2d 76, 79, 156 A.L.R. 337, 341, holding such privileges may be waived, said, "When their possessor chooses to bring into the light the transaction to which the communications relate, he may no longer suppress the communications themselves."

In White v. State, Okl.Cr., 268 P.2d 310, a case where the statute protected confidential communications between husband and wife, the defendant was charged with indecent practices upon his stepchild. A letter written by him to his wife regarding the occurrences with which he was charged was admitted in evidence over his objection that the letter was a confidential communication, but the defendant himself had already testified about it. The court held that to obtain the benefit of the privilege regarding confidential communications, the defendant must refrain from giving testimony concerning them.

In Patterson v. Skoglund, 181 Or. 167, 180 P.2d 108, it was held that by testifying to matter contained in a confidential communication a husband witness had effectively waived his privilege.

Also in People v. Feuerstein, 161 Misc. 426, 293 N.Y.S. 239, 241, it was said there is no reason to permit defendants to testify and "at the same time seal the lips of those who may successfully contradict them."

In State v. Bixby, 27 Wash.2d 144, 177 P.2d 689, 706, the court said in effect that when the person entitled to privilege takes the stand and testifies there is a waiver of the privilege.

When it is remembered that the prohibition against testimony respecting confidential communications is generally more strictly guarded than most other privileges, it is safe to conclude that when a defendant, entitled to the privilege of having his wife's testimony against him excluded, makes charges against his wife, testifies she accused him of having carnal knowledge of their daughter, then told him she had made a mistake, and denies the evidence given by his daughter which involved his wife, his privilege not to have her testify against him is waived, at least insofar as to the matters about which he has given testimony. It was upon this reasoning that the wife was permitted to testify in rebuttal in the instant case.

Perhaps the most direct authority we have discovered is that found in Allen v. State, 35 Okl.Cr. 64, 248 P. 655, 656. This was a case where defendant was charged with rape of his stepdaughter, and it was contended the court erred in permitting the wife of the defendant to testify in rebuttal of her husband's testimony. Defendant had testified to conversations with his wife pertinent to the issue. The court held this testimony waived the defendant's right to exclude the wife as a witness against him saying, "the privilege of a husband charged with rape to have the testimony of his wife excluded is a privilege or right which may be waived".

These cases are in line with the general principle of waiver as it is stated in 97 C.J.S. Witnesses § 310c, pp. 861, 862:

" * * * Where, however, the penitent, spouse, or client has first testified as to such matters voluntarily, or at least without objection, the privilege is lost; and the same is true of testimony of a patient or other privileged person. * * * "

The legislature of at least one state, Pennsylvania, has seen fit to adopt a statute which expressly gives the wife the right to testify in rebuttal under such circumstances:

"In any criminal proceeding brought against the husband, if he makes defense at the trial upon any ground which attacks the wife's character or conduct, she shall be a competent witness in rebuttal for the commonwealth." 1899, April 11, P.L. 40, § 2; now 19 P.S. § 685.

Perhaps in this case it is not necessary that we go so far as to hold that in all criminal prosecutions against a husband where he attacks the wife in his testimony, the wife becomes privileged to testify in rebuttal when she would otherwise be an incompetent witness due to the marital relation. This is because the defendant seems to have made the wife his own witness by the manner in which the defense cross-examined her. In 97 C.J.S. Witnesses § 118, p. 527, it is said:

" * * * where a witness objected to as incompetent is allowed to testify, the objection is not waived by cross-examining him as to matters to which he has testified on his direct examination, *although if the objecting party brings out new matter on cross-examination he makes the witness his own and waives his incompetency.*" (Emphasis supplied.)

Upon her direct examination, the only material testimony given by the wife in rebuttal was that her husband went into the child's room and when he came out he said "he had broken the rubber on her" and that he then took the child to the bathroom and "performed the douche on her". As has been noted, defendant's statement to his wife about the rubber is robbed of any confidential aspect because it was made in the presence and hearing of the elder child and the child testified to it. Fox v. Fox, 75 Wyo. 390, 296 P.2d 252, 255, 256. Although this testimony did not amount to a direct denial of defendant's statement that she had prompted her daughter to testify against him, it at least tended to dispute that charge. In that sense, it can hardly be said that her testimony was improperly ad-

mitted, as its effect was to challenge the truth of defendant's innuendo that she had induced the daughter to give false evidence against him. The wife's further testimony that the defendant took the child to the bathroom and performed a douche on her was relatively of the same nature.

■ The wife having thus testified, the defendant was privileged to cross-examine her as to matters covered by her testimony without waiving his objection. However, it seems clear to us that the cross-examination of this rebuttal witness went far beyond the scope of her direct testimony, in that the defendant propounded to her questions which elicited her knowledge of the criminal acts charged; the source of her knowledge; her statement that although she did not actually see the defendant in bed with the child she knew and heard what went on and that the child told her what had happened; that she had her husband arrested because the child said he had intercourse with her; that she and her husband had difficulty over what he had done to the daughter; that defendant told her "he had been using her [the child]"; that defendant also had illicit carnal knowledge of the child at other times, and on one of those occasions he thought the child had become pregnant "so he filled her full of jelly and had intercourse with her", and that both the defendant and child had told her about this.

■ After defendant opened the subject of his having used his daughter, the wife, on her re-direct examination, testified the defendant also told her "he had the privilege to use his daughter if he cared to". By defendant's cross-examination of his wife, the defense made her its own witness. This furnished an additional reason why no prejudicial error was committed in permitting the wife to testify as she did in rebuttal.

We have examined and carefully considered the following, which are all the cases cited by appellant, and which, by the way, are all federal cases. None of them are sufficiently analagous to the situation which confronts us in this case to be persuasive.

Stein v. Bowman, 13 Pet. 209, 38 U.S. 209, 10 L.Ed. 129, involved heritage; Funk v. United States, 4 Cir., 66 F.2d 70, certiorari granted 290 U.S. 616, 54 S.Ct. 91, 78 L.Ed. 538, reversed 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, a prohibition case; Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021, a prosecution for murder of an unknown man; Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991, another murder case; Paul v. United States, 3 Cir., 79 F. 2d 561, forgery; Brunner v. United States, 6 Cir., 168 F.2d 281, fraud; United States v. Walker, 2 Cir., 176 F.2d 564, certiorari denied 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547, illegal transportation of money fraudulently taken; Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Id., 335 U.S. 811, 69 S.Ct. 43, 93 L.Ed. 367, certiorari granted, 2 Cir., 167 F.2d 943, under the Mann Act, 18 U.S.C.A. § 2421 et seq.; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Id., 326 U.S. 711, 66 S.Ct. 169, 90 L.Ed. 420, certiorari granted United States v. Lekacos, 2 Cir., 151 F.2d 170; Kotteakos v. United States, 66 S.Ct. 270, violation of the National Housing Act, 12 U.S.C.A. § 1701 et seq.; Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Id., 327 U.S. 776, 66 S.Ct. 962, 90 L.Ed. 1004, certiorari granted, 3 Cir., 153 F.2d 176, defrauding the United States; and Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125, the Mann Act.

The last named case, considerably stressed by counsel, should give appellant little comfort because it says reason and experience should be looked to for modification of the disqualification rule and the court expressly cautions that its decision does not foreclose whatever changes may be dictated by reason and experience.

A case frequently cited as precedent for decisions under statutes similar to, or identical with, our own, and which hold the exception does not extend to prosecutions for injuries to a spouse's child, is State v. Woodrow, 58 W.Va. 527, 52 S.E. 545, 546, 2 L.R.A.,N.S., 862. Although the court in

that case said, "The act must touch her person, or her personal *individual right,* as a person *distinct* and *individualized* from the balance of the community, to come under the exception spoken of", it held the husband's murder of the wife's child was but a moral, rather than a legal, wrong to her and consequently not within the exception. Strangely enough, the Woodrow case does not appear to have been decided under a statute but under the common law. Certainly, at the time the opinion was rendered, West Virginia did not have a statute like our own. Furthermore, the legislature of that state subsequently enacted a statute expressly including in the exception crimes committed against the child of the spouse, thus nullifying the effect of that decision. While we cannot say what influence the Woodrow case had upon West Virginia's legislative action, the powerful dissenting opinion of Mr. Justice Poffenbarger seems to us to be far more persuasive than the majority holding, and in fact it more nearly accords itself with the majority criterion that the act must touch the wife's individual right, as a person *distinct* and *individualized* from the balance of the community. We also find the Woodrow decision criticized in State v. Kollenborn, Mo., 304 S.W.2d 855, with the Missouri court saying the West Virginia decision was somewhat narrow and strained.

We are not the first to find the several jurisdictions of this country in hopeless conflict respecting the present state of their laws regarding the disqualification of a spouse to testify against the other when prosecuted for a criminal offense, or as to interpretations to be given statutory exceptions to the general rule of incompetency.

We must concede that a majority of the holdings are contrary to the position we take, although we are inclined to question that they represent the weight of authority. The principal reasons given for such holdings are that the jurisdiction's applicable statute is merely declaratory of the common law or that public policy is best served by denying the spouse's testimony in order to preserve the marriage. The first of these reasons is not present in this State, and the second is not in keeping with the spirit of our legislative act. On the other hand, we find many states where the laws have been molded to fit existing conditions. So we find some statutes expressly permitting a spouse to testify where the other is prosecuted for perjury, abandonment, non-support, child neglect, child abuse, adultery, bigamy, rape, crimes against nature, incest, and perhaps others. In addition, we find the courts of our sister state, Colorado, interpreting a statute like our own as permitting a spouse to testify against the other in cases where it was the child and not the spouse who was the physical victim of the other's criminal act. See O'Loughlin v. People, 90 Colo. 368, 10 P.2d 543, 82 A.L.R. 622; Read v. People, 122 Colo. 308, 221 P.2d 1070; Dill v. People, 19 Colo. 469, 36 P. 229, 41 Am.St.Rep. 254; Schell v. People, 65 Colo. 116, 173 P. 1141, L.R.A.1918F, 954; Wilkinson v. People, 86 Colo. 406, 282 P. 257.

In Iowa the courts also seem to agree with us in State v. Bennett, 31 Iowa 24; State v. Hazen, 39 Iowa 648; State v. Sloan, 55 Iowa 217, 7 N.W. 516; State v. Hughes, 58 Iowa 165, 11 N.W. 706, all cited in State v. Chambers, 87 Iowa 1, 53 N.W. 1090, 1091, 43 Am.St.Rep. 349, where the Iowa court expresses strong criticism of People v. Quanstrom, 93 Mich. 254, 53 N. W. 165, 17 L.R.A. 723, and Bassett v. United States, 137 U.S. 496, 11 S.Ct. 165, 34 L. Ed. 762, both of which held to the contrary. State v. Shultz, 177 Iowa 321, 158 N.W. 539, a later Iowa case, also permitted the wife to testify.

Nebraska, in Lord v. State, 17 Neb. 526, 23 N.W. 507, where the statute was the same as ours, held the wife competent to testify against her husband when he was being tried for adultery, and in Owens v. State, 32 Neb. 167, 49 N.W. 226, 227, 228, the court recognized the state could have had the wife testify against her husband upon his trial for unlawful cohabitation.

Later on in Harris v. State, 80 Neb. 195, 114 N.W. 168, where the husband was on trial for incest, the court adhered to its former rulings.

In the early Texas cases of Morrill v. State, 5 Tex.App. 447, the court indicated a spouse might testify against the other in a criminal prosecution, and in Roland v. State, 9 Tex.App. 277, 35 Am.Rep. 743, it was expressly held the husband might testify against the accused when his wife was being prosecuted for adultery. However, in Compton v. State, 13 Tex.App. 271, 44 Am.Rep. 703, a backward step was taken and the contrary was held.

In Murphy v. State, 171 Ark. 620, 286 S.W. 871, 872, 48 A.L.R. 1189, the Arkansas court had no hesitancy in deciding a wife might testify when her husband was being prosecuted for abandoning her. The statute of that state provided that either of the spouses might testify against the other "in all cases in which an injury has been done by either against the person or property of either". The appellant there contended that the statute related only to physical injury to the person, but the court found that contention to be too narrow a construction of the statute, saying:

> "* * * The manifest purpose of the statute was to permit the husband or wife to testify against the other in a criminal prosecution in any case where the offense involved an injury to the spouse personally, in addition to the effect of the offense upon society at large. In other words, where it is a special injury to the spouse, he or she may testify against the other. The nature of this offense brings it within the exception, for the deserted wife undoubtedly suffered an injury in excess of the effect of the offense upon the public generally."

The Arkansas statute appears to us to be even more restrictive than ours in that its exception is limited to crimes against "the person or property" of the other, while Wyoming's exception includes all crimes against the other. Surely when our learned judicial brothers to the south reason that *abandonment* is a crime against the *person* of the unoffending spouse, we are taking but a modest step forward in furthering the spirit of our law when we say the rape of her own flesh and blood in the person of her thirteen-year old daughter is a crime against the mother who bore her.

Although we believe the conclusions we have reached are fully justified under accepted rules of statutory interpretation, as well as being in accord with views announced by respected courts, we feel this is one of those matters exemplifying the soundness of the statement found in 8 Wigmore on Evidence, 3d ed., § 2285, p. 531, relative to fundamental conditions which must exist to justify a privilege excluding a spouse's testimony, the fourth of which is:

> "The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." (Emphasis that of Wigmore.)

While the preservation of the marital relation is a matter of primary importance as a matter of public and social policy, when it becomes obvious, as it has in this case, that the marriage should no longer endure, the injury to the marital status which results from permitting the wife to testify cannot be greater than is the benefit to society by its insuring that justice be done.

Considering all that has been said, we believe a safe ground upon which to decide this case is to hold that it is within the purview of our statute that the wife be considered a competent witness and be permitted to testify because she has suffered a special, particular and personal wrong through the rapacious assault upon her child. If the wife was competent to testify upon the State's case in chief, had she

been permitted to do so, she certainly was a competent witness to testify in rebuttal as she did. In any event, had there been error in allowing the wife to testify on rebuttal, that error was cured when upon her cross-examination the defendant went so far afield of matters to which she had testified in her direct examination as to make the wife the defendant's own witness.

Since we find no error in the proceedings below, the verdict of the jury and the judgment of the court thereon must be affirmed.

Affirmed.