UNITED STATES v. REDDIN et al.

(District Court, E. D. Wisconsin. March 4, 1912.)

1. CRIMINAL LAW (§ 113*)—PLACE OF OFFENSE.

Shipment in Indiana of dynamite or nitroglycerine in interstate commerce by participants in a conspiracy to violate the federal laws against such shipment was the act of all the conspirators, permitting trial in Indiana of conspirators found in another state.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

2. CRIMINAL LAW (§ 242*)—FEDERAL OFFENSES—REMOVAL FOR TRIAL.

Persons charged as conspirators are properly removed to the state affording the most convenient place of trial from the standpoint of all the defendants, in the absence of a constitutional right to discharge from arrest.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510; Dec. Dig. § 242.*]

3. CRIMINAL LAW (§ 242*)—FEDERAL OFFENSES—REMOVAL FOR TRIAL.

On application for a warrant of removal of a person to another state for trial for a federal offense, technical considerations should be avoided as far as possible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510; Dec. Dig. § 242.*]

4. CRIMINAL LAW (§ 242*)—FEDERAL OFFENSES—REMOVAL FOR TRIAL.

On application for a warrant of removal of a person to another state for trial for a federal offense, the indictment cannot be attacked as a pleading, but may be as a piece of evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510; Dec. Dig. § 242.*]

5. CRIMINAL LAW (§ 242*)—FEDERAL OFFENSES—REMOVAL FOR TRIAL.

An indictment charging formation of a conspiracy December 1, 1906, to violate federal laws by shipping dynamite or nitroglycerine in interstate commerce and continuous carrying on of the conspiracy until filing of the indictment, specific shipments made in 1910 and 1911, being set forth, showing times, trains, and places of shipment and destination, is sufficient to warrant removal of accused as co-conspirators, though they did not enter the conspiracy December 1, 1906.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510; Dec. Dig. § 242.*]

Application by the United States for a warrant to remove William E. Reddin and another to another state for trial. Application granted.

Guy D. Goff, U. S. Atty.

W. B. Rubin, for defendants.

SANBORN, District Judge. This is an application for a warrant of removal of defendants to the district of Indiana for trial of the so-called dynamite conspiracy case under an indictment for conspiracy against a large number of persons, filed at Indianapolis February 6, 1912. It is understood that most of the defendants have given bail for their appearance at Indianapolis, but these particular ones object to removal on the constitutional ground that if any offense against the United States was ever committed by them, which they do not admit, it was committed in Wisconsin, and not in Indiana, and that they are entitled to be tried where the supposed offense was committed. They urge it as a great hardship to be tried where they are not known, where they will be put to great expense, great loss of time through a long trial, and consequent loss of earnings. Certainly it is a hardship, although it may be assumed that their union will bear the expenses. It was said on the argument that they will have able counsel in Indiana, if they go there for trial, and that all possible defenses will there be properly made.

[1, 2] It seems perfectly clear to me that, if there has been any

offense by Reddin and Seiffert, it was committed in Indiana as well as in Wisconsin. The offense charged is a conspiracy to violate the federal laws against the shipping of dynamite or nitroglycerine in interstate commerce. A large number of shipments between different states are alleged in the indictment to have been made by McManigal and J. B. McNamara, many of them into Indiana from other states, and a number from Chicago to Milwaukee; and the conspiracy itself is charged to have been formed in Indiana December 1, 1906. Every such shipment by McManigal or McNamara was, of course, the act of all those defendants who had then joined the conspiracy, if there was one. So the offense, if any, was committed in Indiana, although it may also have been in other states. The most convenient place of trial from the standpoint of all the defendants is in the district of Indiana. Therefore these defendants should stand trial there, with the others, unless they have the right, under the Constitution, to be discharged from arrest here.

In order to show their right to discharge, they were called as witnesses. Seiffert testified he was never in Indiana except in the winter of 1904–05, when he went through on a train. He also stated that in February, 1911, he took Mr. Reddin's place for four days as business agent and financial secretary of the Local Bridge and Structural Iron Workers, and wrote some business letters for him during that time to J. J. McNamara about the work of Heyl & Patterson on the Greenfield avenue job, but not on the Milwaukee Western Fuel Works, which was blown up March 16, 1911. Mr. Reddin testified that he had been such business agent and secretary for 6½ years, had been in Indiana twice, first in September, 1908, and the last time Sunday, February 25, 1912. The trip to Indianapolis in 1908 was to attend a convention, and this testimony was confirmed by another witness. Both Seiffert and Reddin deny in the most positive terms any connection, participation, or knowledge of the conspiracy alleged in the indictment.

[3-5] It is urged by counsel for the defendants that the testimony conclusively shows that they could not have been original parties to the conspiracy alleged because of their denial and the inherent probability. It is inconceivable, he says, that a conspiracy of this nature could have been, at first, within the knowledge of any one outside the inner circle, among the officers of a great fraternal order. It is extremely improbable that the original conspiracy could have taken in these men, one of whom was not even a local officer. If, however, counsel says, it is possible that these defendants could have become identified with the conspirators, they must have been taken in at some later time, and at some place other than Indiana, and that the indictment should have shown when and where they joined. The Constitution provides that the accused shall be informed of the nature and cause of the accusation against them. It is not enough to say that in 1906 A., B., and C. entered into a conspiracy, and then on the trial attempt to show that C. was taken in long after that date, unless the time and place are given; otherwise C. has no opportunity to know what he is charged with, and so cannot make a proper defense.

The grand jury which found this indictment, and the person who drew it, must have known that a desperate conspiracy like this could not have been made by 50 people, scattered over the country, but only by a very small group; and that, if others were drawn in later, as the dynamiting operations extended to various localities, it was the duty of those responsible for the indictment to inform these later conspirators just what the charge against them was. Since the courts have always been watchful of the rights of a person charged with crime to see that he was sufficiently informed in order to properly defend himself, the argument made is not without considerable force.

The conspiracy was evidently one which was to continue until the employers who were fighting the union should be brought to time. It was contemplated that it might last more than three years, which is the period after which no conspiracy can be prosecuted, but any act in execution of the original plan may be regarded, as a renewal of the original combination, and may be prosecuted against any one participating, personally or through others, within three years after such act. Assuming that the charge of conspiracy December 1, 1906, is outlawed, and that Reddin and Seiffert could only be prosecuted from the time they came in, and through McManigal or McNamara did something to effect it, must the time and place of their coming in be alleged? The three essential things necessary to enable the government to prosecute for conspiracy more than three years old are stated in this indictment thus: (1) The original formation of the conspiracy December 1, 1906; (2) the continued existence and carrying on of the conspiracy by all the defendants from that date to the time of filing indictment, particularly at the time of the carrying of each shipment of dynamite in interstate commerce; (3) many shipments in executing the conspiracy, giving time, place, train number, place of shipment, and destination. In substance, the indictment says to these two defendants, "You conspired together, and with others December 1, 1906, you kept on executing the conspiracy, particularly on July 27, 1910, August 15, 1910, September 17, 1910, March 5, 1911 (and various other dates), by carrying 40 sticks of dynamite (or other number particularly mentioned) in a passenger car, on train No. 21 from Chicago to Milwaukee." And these defendants have understood that they were charged with coming into the alleged conspiracy at the time of the Milwaukee shipments, as appears from their denials in these proceedings. These denials are like this:

"Said defendant particularly denies each and every allegation in said indictment wherein it is set forth that on the 15th day of March, 1911, or at any other time pursuant to any conspiracy in which this defendant took any part, or that pursuant to any knowledge or understanding or agreement, or in any wise in which this defendant might know or ought to have known, did the said Ortie McManigal transfer, carry, or convey forty sticks of dynamite or any other substance between [Chicago and Milwaukee]."

It is true that these denials are made only by way of excessive caution, but they show that defendants may sufficiently know what the real charge against them is.

Suppose the indictment had charged that Reddin and Seiffert came in when the first Milwaukee shipment was made, and it turned out

on the trial that they, or one of them, wrote an earlier letter showing he was involved. The objection would then be raised that the proof had failed, and that he or they must be discharged. By attempting to be too explicit the government might be out of court.

In these proceedings all technical considerations are to be avoided as far as possible. McNichols v. Pease, 207 U. S. 100, 28 Sup. Ct. 58, 52 L. Ed. 121. One highly technical and narrow rule is found necessary which is that the indictment cannot be attacked as a pleading, but may be as a piece of evidence; that is, abandon entirely the standard fixed by the courts as a test of criminal pleading, and inquire only whether it shows satisfactorily if the accused has been in fact, however inartificially, charged with a crime. Pierce v. Creecy, 210 U. S. 387, 402, 28 Sup. Ct. 714, 52 L. Ed. 1113. On its face the indictment is clearly good, but by evidence it is shown that Reddin and Seiffert were not at first implicated. It would be requiring much too exact a standard, I think, to compel specific statement as to just when every defendant in a conspiracy where the utmost secrecy was necessary actually came in.

The application for removal should be granted.