**UNITED STATES v. FISWICK et al.**

No. 8864.

Circuit Court of Appeals, Third Circuit.

Argued July 26, 1945.

Decided Dec. 10, 1945.

Rehearing Denied Jan. 26, 1946.

Writ of Certiorari Granted April 22, 1946.

See 66 S.Ct. 962.

WALLER, Circuit Judge, dissenting.

———◇———

Frederic M. P. Pearse, of Newark, N. J., (Frank W. Jackson, of New York City, and William V. Azzoli, Fritz Gustav Rudolph, of Newark, N. J., on the brief), for appellants.

Charles A. Stanziale, of Newark, N. J., and Leo Roth, of Washington, D. C.,

(Thorn Lord, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, WALLER, and Mc-LAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Thirty-one persons of German nativity were indicted in the District Court of the United States for the District of New Jersey on September 13, 1944. Six entered pleas of guilty. There was a dismissal as to one, a severance as to fourteen, a trial as to ten, an acquittal as to three, a mistrial as to four and a conviction as to the three who have appealed.

The indictment alleged that during the summer of 1941, and for five years immediately preceding, Friedhelm Draeger was the German Consul in the City of New York and Kreisleiter, or leader, of the overseas portion of the National Sozialistische Deutsche Arbeiterpartei, hereinafter referred to as the Nazi Party, in the United States; that during the same period Hans Vogel was secretary to Draeger; and that the said · Consul and secretary were engaged in matters concerning the operation of the Nazi Party and its members and activities in the United States; that each defendant was a German National and a member of and affiliated with the Nazi Party; that the Alien Registration Act of 1940, Title 8, U.S.C.A. § 452 et seq., and the regulations issued thereunder, required each of the defendants to register and to furnish information, among other things, as to the existence, kind and extent of his membership in the Nazi Party to the end that the United States, in the exercise of its governmental functions, might have accurate and complete information during the national emergency; that the defendants conspired illegally with Draeger and Vogel and with each other and with others to the grand jurors unknown, to defraud the Government of the United States by denying, falsifying, concealing, misrepresenting, etc., membership in such Nazi Party so as to defraud, hamper, impede, impair, frustrate and obstruct the United States in obtaining accurate information as to their membership and activities in, their affiliations with, and the activities of the Nazi Party, its clubs, organizations, functions and activities in the United States; that Friedhelm Draeger, Hans Vogel, the German Ambassador, members of his staff, and others to the grand jurors unknown, would advise, counsel, instruct, command and direct the de-

'fendants and others similarly situated to deny, deceive and misguide the United States in reference to their membership or affiliation in said Nazi Party in filling out the form required of each of them under the regulations pursuant to the Alien Registration Act of 1940; that it was part of the conspiracy that these defendants and other members and affiliates of the said Nazi Party within the United States, would continue after the Fall and early Winter of 1940, and from day to day thereafter to the date of the bringing in of the indictment, to deny, falsify, deceive and misrepresent to the United States their agencies, departments and bureaus, the material facts relating to the existing kind and extent of their membership and activities in, affiliation with, and the existence and activities and functions of the said Nazi Party within the United States, to the end that the denials, concealments, falsifications, misrepresentations, suppressions and equivocations made in connection with the above referred to Alien Registration Act of 1940 would continue thereafter to the detriment and failure of the United States and their agencies, departments and bureaus, to ascertain fully, fairly and accurately during a National emergency, information relating to the membership, policy and activities of these defendants and others in the Nazi Party in the United States, and for the furtherance of the political activities, public relations, public policy of the Government of the Third German Reich, all of which information in said form under said Act of Congress was vital to the internal security of the United States; that the defendants would appear before proper alien registration officers and authorities for the purpose of registration, and in such registration would falsely and fraudulently omit to disclose and truly state their membership in, and connection and affiliation with, the clubs, societies, organizations and activities of, the Nazi Party within the United States; and numerous overt acts were set forth and alleged to have been committed in pursuance of, and in order to effect the objects of, said conspiracy. Defendants were not indicated for the substantive offense of false registration as was done in the case of United States v. Heine, 2 Cir., 149 F.2d 485.

There was testimony for the Government by Miss Lilly Illian, an employee of the German Consulate from March, 1939, until May, 1941, that Dr. Draeger, the Consul, was Kreisleiter, or leader, of the Nazi Party in New York; that Hans Vogel was secretary to the Consul; and that a part of her duties was taking dues of the members of the Nazi Party and taking care of correspondence pertaining to it; that Vogel dictated to her generally and that occasionally so did Dr. Draeger; that applications for membership in the Party were taken at the German Consulate and thereafter transmitted to Germany with a report by the Consul; that records were kept at the Consulate pertaining to members of the Party and application for membership therein; that the total amount of initiation fees, etc., was $15.50; that there were also dues of $1.00 per month; that the final acceptance of an application for membership had to come from Germany, but applicants for membership received a card and members received a book in which stamps could be placed showing payment of dues; that meetings and activities were held either in the Consulate or under its auspices; that a list had been made up from the file cards which were once kept in the Consulate but later destroyed; that Vogel advised her the file cards had been burned in the early part of 1940; that witness could not identify either one of the three convicted appellants but three names identical with those of the three defendants were on the list of Party members; that after the registration of aliens in the United States was required, the Consulate, either through Dr. Draeger or Hans Vogel or herself, gave instructions to the members as to the wording that should be used in filling out the registration statement; that the members were first instructed by Dr. Draeger to deny membership and not to put the fact that they were members of the National Socialist Party in the registration questionnaire; that they were later advised to send an amendment of their answers to the State Department wherein they should state that they were non-resident members of the Nazi Party; that some of the defendants were instructed to state in their questionnaires that they were members of the Reichsdeutsche Vereinigung. All three of the appealing defendants, acting on such advice, in answering their questionnaires denied that they ever had, within five years, belonged to or been affiliated with, or an active member of, any organization devoted to political activities, public relations, or public policies of a foreign government, with the exception of defendant Jacob L. Mayer, who, on such advice, stated that he was a member of the Reichsdeutsche Ve-

reinigung. (He later admitted that he had never heard of that organization before and that he had been advised by the Consul to say that it was a welfare organization.)

There was testimony by Gustave Gauerke, an employee of the Consulate, which corroborated a part of the testimony of Miss Illian. Emil Wilhelm Borchers, a defendant, also testified that he was a member of the Nazi Party and that Vogel advised him, and three others who were with him at the Consulate, that when a member of the Nazi Party registered he should not state that the Party was organized, nor that he was a member thereof, and that he should turn in his Nazi membership book or card to the Consulate; that he did this; that he had attended functions at which Dr. Draeger and Hans Vogel were present, at which Dr. Draeger began the exercises with the "Heil Hitler" greeting and the Hitler salute. Witness Albert J. Komecki testified as to certain activities of the German-American Festival Committee, which were under the supervision of the Consulate.

The Government next introduced as a witness Mr. Bell of the F. B. I., who testified, over objections, as to conversations he had had with the defendant Mayer on the 22nd and 23rd of November, 1943, wherein certain admissions were made by that defendant. In the first interview Mayer denied, according to the witness, that he was a member of the Nazi Party, but on the succeeding day Mayer admitted that he was a member and that he had been advised by the Consul to deny membership when filling out the registration statement and to state that he was a member of the Reichsdeutsche Vereinigung. A statement by Mayer to the same effect as his oral testimony was received into evidence.

Other F. B. I. agents later testified as to conversations with and written statements by the defendants, Fiswick and Rudolph, which latter also went into evidence. Fiswick on April 29, 1944, in talking with the particular F. B. I. representative, stated to that person that he had told an Enemy Alien Hearing Board at Newark, New Jersey on January 7, 1944, that he was not a member of, or a prospective member of, the Nazi Party in the United States. He stated that he had also been interviewed by agents of the Newark office of the F. B. I. and had told them that he was not a member of, or a prospective member of, the Nazi Party. He also told the agent then questioning him, in the beginning of the interview, that he was not a member of, or a prospective member of, the Nazi Party. It was following that, according to the agent, that Fiswick said he desired to tell the truth and would feel a lot better if he got the thing off his mind and then proceeded to tell everything that is contained in the signed statement. The signed statement sets out that Fiswick joined the Nazi Party in 1933 filling out the application in the presence of Hans Vogel, that he recognized Adolph Hitler as the leader of the German Reich and agreed to obey the laws of the German Reich. It goes on to say that in 1940 Vogel told him and four others it was not necessary to state on the registration form that they were members of the Nazi Party and that he followed those instructions. It then reads that in April or May of 1941 he attended a Nazi meeting at the New York German Consulate at which the Consul advised that the Consulate was closing and that war was possibly coming and that all the members should obey the laws of the United States and that they should destroy their membership cards; Fiswick destroyed his prospective member's card; he also burned his last German passport as it showed that he had registered with the German Consulate for military service in 1939.

The defendant, Rudolph, at the trial below repudiated a statement which he had given on November 17, 1943, wherein he admitted that he had been advised by a German Consular official to state on his registration card that he was not a member of the Nazi Party and if anything happened to deny membership in that Party with other matters in the statement more or less supporting the indictment.

As stated the question of the admission of the above referred to conversations and statements into evidence first arose in connection with Mayer's statements, oral and written. The District Judge at the time held there was sufficient evidence for the jury to consider in order to infer the existence of a conspiracy. He said further: *"I cannot find myself and the Government would not wish me to find as a matter [of] fact that the Government has proven the existence of a conspiracy because I would then be assuming the functions of the jury."* (Emphasis ours) The statements were at first admitted only as to the individual defendants making them. While of

no prime importance in view of what happened later, Fiswick at least seems to have consented to this, with his attorney saying at page 190a of the record: "And of course I am consenting to the admission of these statements only as to the individual defendants, if the court please, whom they may affect."

Later, on the motions for dismissal, the Court allowed the statements in evidence generally against all the defendants on the Government's theory of continuing conspiracy.[1]

In his charge the Court said regarding this:

"There have been admitted into evidence certain statements, written statements and verbal admissions *made by conspirators,* of *activities done in furtherance of the object of the conspiracy;* and these admissions and statements are admissible against all of the co-conspirators if made during the *continuance of the conspiracy and during their participation in it.* I have ruled that *this is a continuing conspiracy,* and with the exception of one defendant, to whom I shall advert later, I have ruled that all of the admissions and all of the statements are properly evidential against all of the defendants; and these admissions and statements were not allowed for the purpose of proving the conspiracy itself, but simply to prove acts and course of conduct which would be chargeable to *the other co-conspirators,* because done, *or if done,* done in furtherance of the object of the conspiracy." (Emphasis ours)

Before coming to the main question it might be well to dispose of another situation arising from the same part of the charge above quoted. The trial was rather long drawn out. It was hard fought by both the attorney for the Government and those for the defendants. A careful reading of the record and of the briefs shows that the Court's reason for letting the statements generally into evidence was thoroughly understood by defense counsel. What they objected to and now stress as error was the Court's holding that whether there was a conspiracy and if so, whether it continued as charged, were jury questions. It is urged that there was no proof of the conspiracy and even assuming that there was, that there was no proof of a continuing conspiracy. The appellants say that at most there was evidence of a concluded conspiracy with a continuing result. It is that problem which presents the real issue. Therefore while the portion of the charge quoted standing alone might create the impression that the Court gave the jury as a fact the continuance of the conspiracy and so took the latter's existence for granted, it does not so develop when the entire circumstances are examined. The Trial Judge clarified the language later to the expressed satisfaction of the jury when he said:

"Here is what I said, that the acts or admissions of each of the co-conspirators are admissible as evidence against all of the other co-conspirators *provided you find that there was a conspiracy and that they were all in it.* Of course if you find that any particular individual defendant was not in this common agreement that the indictment alleges existed, then he would be immediately out of the situation. Does that clarify it?

"The Foreman: Quite clear." (Emphasis ours)

Further indication that the jury understood they had to first pass upon the question of whether there was a conspiracy is shown by the language of the foreman addressing the Court on request for instructions where he said:

"The Foreman: A question came up, your Honor on that. We are all well aware

---

[1] The Court said as to this, page 205a of the record:

"The Court: Now, in order that there may be no mistake, a question has arisen which I conceive to be novel, as to whether or not there is a continuing conspiracy without a positive act; I am ruling *that the conspiracy continued to the date of the return of the indictment,* because I hold it a plot contemplating bringing to pass a continuing result which could not continue without the continuous cooperation of the conspirators to keep it up, *and that there is such continuous cooperation.* That has been the determination of the Supreme Court where there was an act of commission; I am now extending it to a situation whereby cooperation may be indicated by failure to do some act to indicate a desire to bring to an end the continuing situation effected by the act previously done. Under that ruling, and in order that there may be no further mistake, I shall rule that all the statements which were made by each of the defendants, although they were made after 1940, will be admissible against each of the other alleged co-conspirators." (Emphasis is ours.)

that Dr. Draeger and Hans Vogel and Zeglin are mentioned in the indictment as conspirators, *and if we find a conspiracy* existed we would then conclude that at least those three were in it in the beginning." (Emphasis ours)

The meticulous differentiation in the verdicts itself points to the jury's proper grasp of the scope of their inquiry. That the attorneys for the defendants had a correct appreciation of the Court's position is shown (a) by no exception to that part of the charge; (b) in their brief (bottom of page 31) interpreting the particular language of the Court, they say:

"However, in this case the Court *went much further and held that* there was *proof* that a conspiracy existed and continued down to the time of the filing of the indictment * * *." (Emphasis ours)

As seen, their quarrel with the Judge is that he held there was *proof* of a conspiracy and of its continued existence. The appellants do not pretend that the Court at any time meant to imply that the continuance of the conspiracy and therefore the conspiracy itself had to be assumed by the jury. (c) The above quotation from the charge is made the subject of appellants' Point IV. As stated, no exception was taken to this. It is included, however, on the theory that it comes within the first exception which reads: "I take exception on behalf of all defendants to that portion of your Honor's charge with respect to the admission in evidence of the statements of the defendants and their binding effect upon the other defendants." The argument urged is illuminative as to what the language meant to the defense. It reads:

"The foregoing, it will be observed, is an instruction to the jury *as to what effect the statements or admissions of the defendants may have upon the minds of the jury in its deliberations and in determining whether or not there was a conspiracy, whether or not it was a continuing one and whether or not any of the defendants had any part in it.*

"For the reasons which we have heretofore set forth in other points we submit that this part of the Court's charge was prejudicial error." (Emphasis ours)

In other words, as the case finally went to the jury it seems conceded, certainly from the record it is what happened, that the Court left to the jury the questions of whether there was a conspiracy and if so, whether such conspiracy continued.

The dates of the talks with Mayer and of his statements were November 22 and 23, 1943; those as to Fiswick were April 29, May 19 and May 26, all in 1944; and as to Rudolph they were November 17, 1943, and September 5, 1944. The indictment was filed September 13, 1944. Mayer, the last defendant to register, did so on December 23, 1940. It is argued that the last overt act took place when Mayer registered and that the conversations with the defendants and the giving of their statements occurred years after the conspiracy must have ended. This completely overlooks not only the theory of the Government's case but the plain language of the indictment. The scheme did not end with false registration. The latter was essential but to accomplish the end result the concealment of Nazi membership had to be affirmatively maintained thereafter. A continuing conspiracy was specifically charged with the proof presented by the Government making it a jury question whether there was such a conspiracy. It is true that the evidence was all pretty much circumstantial but if it believed, it presented a pattern of deliberate and important hostile fraud on the United States. The three sets of admissions are part of this. In the Mayer episode on November 22, 1943, he denied he was a member of the Nazi Party. The next day he admitted he was such a member together with other details which fitted in with the indictment. In other words, Mayer as late as November 22, 1943, in denying his Nazi membership, did something which could have been believed by the jury to have been an overt act in the alleged continuing conspiracy and which was some evidence that he was still following the plan and furthering the conspiracy. The same applies to Fiswick who on April 29, 1944, denied his Nazi Party membership and later in the same interview admitted it and then revealed the method used as to registration. The reverse of the medal is presented with Rudolph. The jury could have concluded that he persisted in actively maintaining the conspiracy down to the extent of testifying at the trial that he had never received or followed registration instruction and so denying an earlier admission. If accepted by the jury, and the verdicts indicate that it was, the above referred to evidence of the appellants is some proof of specific overt acts in furtherance of the

plan conceived and partially executed in 1940.

There is no dispute as to the governing law. It is stated in United States v. Kissel, 218 U.S. 601, at page 607, 31 S.Ct. 124, at page 126, 54 L.Ed. 1168:

"But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one."

This has been followed in Brown v. Elliott, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; Culp v. United States, 8 Cir., 131 F. 2d 93; Lonabaugh v. United States, 8 Cir., 179 F. 476; Breese v. United States, 4 Cir., 203 F. 824; Shaw v. United States, 5 Cir., 41 F.2d 26; Eldredge v. United States, 10 Cir., 62 F.2d 449. The converse of the above rule is just as strongly supported by those opinions, namely, that a continuing result of itself does not change the conspiracy into a continuing one. It is the nature of the agreement rather than the acts of the parties that determines if the conspiracy is a continuing · one. The instant indictment charges a continuing agreement between the conspirators from prior to 1940 down to the date of the indictment. That was the foundation of the indictment and of the Government's evidence. It was on that theory that the statements by and the conversations with the defendants were allowed.

Several other reasons are suggested for barring the conversations and statements. There is nothing in the record arising from the fact that the defendants were in the custody of the F. B. I. at the time which justifies attack on the admissibility of the evidence because of that circumstance. Of course, if the conspiracy had been abandoned prior to the conversations and statements, the latter would have been inadmissible generally but as shown both the conversations and statements pointed to the then present existence of the conspiracy. Nor do we think that it can be maintained that the conversations and statements must be in destruction of the conspiracy. That might be one conclusion but the jury could also have inferred that as late as the trial Rudolph by denying his earlier statement, was still affirmatively aiding the scheme set out in the indictment. The same thought applies to Mayer down to November 22, 1943, and to Fiswick until April 29, 1944. The conversation of Mayer with the F. B. I. and his statement, should be examined together. The same course is to be taken with the conversation of Fiswick and his statements and with Rudolph's statement and his testimony at the trial. When this is done all three groups can be reasonably interpreted to imply deliberate concealment of Nazi Party membership down to the mentioned dates. It is not difficult to accept the so-called confessions as part of the acts which furthered the conspiracy when it is remembered that as to Mayer and Fiswick, their confessions coupled with the immediately preceding denials and as to Rudolph, his trial repudiation of his confession all give some indication at least that there has been a continuing affirmative fraud on the United States.

■ If we are correct that the conversations with and the statements by the defendants, including Rudolph's testimony, are evidence of the continued functioning of the plan of not disclosing information and of giving false information, then there is no difficulty with respect to the statute of limitations. The jury by its verdict obviously believed as they were entitled to that they were dealing with a crime which continued right into the trial itself and therefore cases such as United States v. Irvine, 98 U.S. 450, 25 L.Ed. 193 and Meyer v. United States, 9 Cir., 220 F. 800 do not apply. Compare United States v. Alfano, 3 Cir., 152 F.2d 395.

■ Discussion of continuing conspiracy necessarily includes the basic question of conspiracy as charged in the indictment and as to the latter the same lack of direct testimony exists particularly with reference to conspiracy between the defendants. We agree that the Government's obviously difficult burden is no excuse for lack of proof. However, under the evidence and the legitimate inferences therefrom clearly the conspiracy issue was also for the jury.

An exhaustive examination of the record reveals that the District Judge and the jury were careful in seeing to it that the defendants were given a fair trial. There was no final confusion or misunderstanding by the jury or by defense counsel with respect to the law of the case as pronounced

by the Court. We find no error of any substance.

Affirmed.

WALLER, Circuit Judge (dissenting).

It was necessary for the Government to prove that the Appellants entered into a conspiracy between September 1, 1939, and December 23, 1940 [the date of the last overt act of either defendant], with persons in the diplomatic and consular service of the Third Reich, and with each other, and that the conspiracy so entered into continued until September 13, 1944, the date of the bringing of the indictment. Not only had the Government made these allegations in its indictment, but it put in evidence, over the objection of the Defendants, confessions signed by the Defendant, Rudolph, dated November 17, 1943, and September 5, 1944, as well as admissions or confessions by the Defendant, Mayer, dated November 23, 1943, and by the Defendant, Fiswick, the last of which was dated May 26, 1944. Each of the Appellants, on those dates, made signed statements to the F. B. I. stating their connection with the events and things involved in the case.

If the Government failed to prove that the alleged conspiracy was in continuation on September 5, 1944, the date of the last statement by Rudolph, then it was error to permit any of the statements to be received in evidence against any other alleged conspirator, for it is well established that if the conspiracy had been terminated prior to the date of the confession an admission or a confession by one conspirator, made after termination of the conspiracy, and, therefore, not in furtherance thereof, cannot be received in evidence against any other alleged co-conspirator unless the admission or confession was made in the presence of such other conspirator.

These confessions were each permitted to go in, over appropriate objection, as evidence against all of the Appellants, notwithstanding the fact that the statements could in no wise have been in furtherance of a conspiracy in that they were each made to the F. B. I. in full revelation, termination, and frustration of a conspiracy whose chief object had been the concealment of the same facts as revealed by the confessions.

Rudolph registered December 3, 1940, Fiswick registered December 4, 1940, and Mayer registered December 23, 1940. Mayer's registration is the last overt act by any of the Appellants shown to have been in furtherance of the conspiracy. The statute of limitations began to run from the date of the last overt act. Brown v. Elliott, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; United States v. Bradford, C.C.La., 148 F. 413; United States v. Reddin, D.C., 193 F. 798. A conspiracy, once entered into, is kept alive by overt acts, and each new overt act is a renewal of the conspiracy. There being no proof of any further overt act by either Appellant after December 23, 1940, the Government failed to show a continuation of the conspiracy subsequent to the date of the last overt act. Not only is there no proof of any continuation of the conspiracy after the last overt act, but the Government's own evidence shows that the German Consul notified the Defendants—at a time prior to May, 1941, at which date the Government's chief witness, Miss Illian, left employment in the German Consulate—to amend their registration statements by writing to the Immigration and Naturalization Service and stating:

"However, in order to avoid any misunderstanding I wish to amend my registration so that the same shall show that I am a non-resident member of the National Socialistic German Labor Party since * * *, but have not been actively engaged in any way in said party, or on its behalf, and am not engaged in political activities in this country."

There is no proof in this record that either one of the Appellants was at the time of the registration, or ever had been, anything more than a non-resident member of the National Labor Party. The German Consul was the hub of the wheel in the conspiracy. Neither of the Defendants ever saw or talked with any other Defendant. All of their contacts were with personnel in the German Consulate. Whatever part in any conspiracy these Defendants had was by, with, and through the German Consulate. The evidence shows conclusively that some time prior to the date Miss Illian left the Consulate in May, 1941, the German Consul, the sine qua non of the conspiracy, undertook to end the period of secrecy by advising all members of the Party to file the amended registration statement above quoted, thereby abandoning the conspiracy to keep the United States from finding out who were members

of the National Labor Party of the Third Reich.

Notwithstanding that the last overt act was shown to have been committed on December 23, 1940, and notwithstanding the fact that prior to May, 1941, the German Consul had advised all members to file the amended statements showing their non-resident membership in the foreign political party, the trial Court ruled:

"I am ruling that the conspiracy continued to the date of the return of the indictment, because I hold it a plot contemplating bringing to pass a continuing result which could not continue without the continuous cooperation of the conspirators to keep it up, and that there is such continuous cooperation."

He reasoned that since there was a continuing result there was a continuing conspiracy "to the date of the return of the indictment," notwithstanding the fact that the record shows, without dispute, that the Defendant, Mayer, on November 23, 1943, Fiswick, on May 26, 1944, and Rudolph, on November 17, 1943, each told the F. B. I. the facts so that it cannot rightly be said that any complicity by either Appellant in the conspiracy had continued to the date of the indictment on September 13, 1944. When these Appellants made their confessions to the F. B. I. they necessarily thereby terminated any part in a conspiracy to deprive the Government of the information revealed by such admissions. The confessions were made long before the bringing of the indictment.

Each of these statements was received in evidence as against each of the other alleged conspirators, notwithstanding the fact that neither of the statements was in furtherance of the conspiracy but in its destruction or frustration. Admission of the statements was objected to on the following, as well as other, grounds: (a) That the alleged conspiracy, if any had ever existed, had long since been completed and terminated before the admissions were made; (b) that in any eventuality a statement, not in furtherance of a conspiracy, made by any one Defendant could in no wise be admissible against any other alleged conspirator. These objections were overruled, the Court holding, as a matter of law, that the conspiracy had continued to the date of the return of the indictment, saying:

"Now, in order that there may be no mistake, a question has arisen which I conceive to be novel, as to whether or not there is a continuing conspiracy without a positive act; *I am ruling that the conspiracy continued to the date of the return of the indictment,* because I hold it a plot contemplating bringing to pass a continuing result which could not continue without the continuous cooperation of the conspirators to keep it up, *and that there is such continuous cooperation.* That has been the determination of the Supreme Court where there was an act of commission; I am now extending it to a situation whereby cooperation may be indicated by failure to do some act to indicate a desire to bring to an end the continuing situation effected by the act previously done. Under the ruling, and in order that there may be no further mistake, I shall rule that all the statements which were made by each of the defendants, although they were made after 1940, will be admissible against each of the other alleged co-conspirators." (Emphasis is added.)

Exceptions were properly made, allowed, and sealed. The Court in its general charge also stated to the jury:

"There have been admitted into evidence certain statements, written statements and verbal admissions *made by conspirators,* of *activities done in furtherance of the object of the conspiracy;* and these admissions and statements are admissible against *all of the co-conspirators* if made during the *continuance of the conspiracy and during their participation in it.* I have ruled that *this is a continuing conspiracy,* and with the exception of one defendant, to whom I shall advert later, I have ruled that all of the admissions and all of the statements are properly evidential against all of the defendants; and these admissions and statements were not allowed for the purpose of proving the conspiracy itself, but simply to prove acts and course of conduct on the part of the individual making the statement which would be chargeable to *the other co-conspirators,* because done, or if done, done in furtherance of the object of the conspiracy." (Emphasis is added.)

The foregoing charge to the jury had these serious vices:

(a) It advised the jury that the verbal admissions *were made by conspirators.*

(b) It advised the jury that the activities of the makers of the admissions *were done in furtherance of the objects of the conspiracy.*

(c) It advised the jury *that there was a conspiracy*. Otherwise nothing could have been done in furtherance thereof.

(d) It advised the jury that *the Court had ruled* that *it was a continuing conspiracy,* with the exception of one Defendant.

(e) It advised the jury that the admissions of any Defendant was evidence against all others.

(f) It advised the jury that the statements were admitted to prove acts and course of conduct on the part of the individual making the statement which would be chargeable to *the other co-conspirators.*

(g) It advised the jury that the conspiracy continued to the date of the indictment.

A judge cannot say to the jury that a defendant is a "conspirator" or a "co-conspirator" without telling the jury that "there was a conspiracy." The judge cannot tell the jury that this is a "continuing conspiracy" without telling the jury that "this is a conspiracy." The judge cannot tell the jury that "activities were done by conspirators in furtherance of the object of a conspiracy" without telling the jury that "there was a conspiracy."

Moreover, as we have demonstrated heretofore, there is not the slightest evidence in this case, other than the silence of the Appellants prior to their confessions to the F. B. I., of the continuance of the conspiracy. Neither a conspiracy nor its continuance can be proven by the mere failure of a defendant to make a report to the officers.

This charge to the jury was the equivalent of a peremptory instruction to convict the Defendants.

So the question of whether or not there was proven any concert of action, common understanding, community of purpose, or agreement between the defendants—"together and with each other" as alleged in the indictment—as was necessary in order to show that Defendants were members of the alleged general conspiracy as distinguished from small and separate conspiracies between each one and persons in the Consulate—was wholly for the jury; as were also the questions as to whether or not there was any intent to defraud; or guilty knowledge, or agreement or common understanding; or whether the failure of the Defendants truthfully to answer their questionnaires was intended to be in furtherance of the general conspiracy or for the separate and independent ends of any Defendant; or whether any of the Defendants had abandoned the conspiracy on or before making the admissions; or whether or not the conspiracy had ended when all of the Defendants had registered or when they were advised by the Consul to file a corrected statement saying that they were non-resident members of the Nazi Party, or when they made their true statements to the F. B. I.; and whether or not admissions by any Defendant were made by him as a member of a then existing conspiracy and in furtherance thereof.

These were questions over the answers to which the minds of reasonable men might differ and which answers only the jury could make from the facts and circumstances in evidence.

A statement made by a member of an existing conspiracy, out of the presence of another conspirator, cannot be used against the other conspirator, unless such statement is made in furtherance of the objects of the conspiracy, or in and about the business of the criminal partnership.[1] I reiterate, a statement made in giving the facts to the F. B. I. cannot possibly be held to be in furtherance of a conspiracy which conspiracy has for its chief object the suppression of those same facts.

Nevertheless, the lower Court advised the jury: "There have been admitted into evidence * * * written statements and verbal admissions made by conspirators, of activities done in furtherance of the object of the conspiracy" and that they were, therefore, admissible against all Defendants if made during the continuance of the conspiracy and during their participation in it. He then peremptorily told the jury: "I have ruled that this is a continuing conspiracy," thus telling the jury that there had been a conspiracy and that the statements by the Appellants were made during its continuance.

The Court below, in declaring that the conspiracy had continued until the bringing of the indictment, evidently overlooked the

---

[1] "Acts and declarations of alleged co-conspirators are in a proper case admissible in evidence to establish the conspiracy. Such acts or declarations, if made or done in the absence of the other conspirators, are not admissible unless they relate to, and are in furtherance of, the common design, * * *." 15 C.J.S., Conspiracy, § 92, page 1141.

fact that such a holding required it to assume the prior existence of the alleged conspiracy.

The following statements seem so axiomatic as not to require citation of authorities in support:

(1) The existence, vel non, of a conspiracy is for a jury.

(2) Whether a conspiracy has continued is a question for the jury.

(3) Whether any act committed by a defendant was in furtherance of the object of the conspiracy is for the jury.

(4) No act of an alleged conspirator may be shown except one that the jury would have the right to conclude was in furtherance of the conspiracy.

(5) No statement made by one alleged conspirator is admissible against one who was not present when the statement was made unless there was evidence tending to show that the absentee was a member of the conspiracy and that the statement was made in furtherance thereof.

(6) No statement made by a conspirator after the termination of a conspiracy is admissible against anyone but the maker.

(7) Proof only of several separate conspiracies between individual Defendants and the German Consul would be insufficient to establish the existence of a general conspiracy under an indictment which alleged that each Defendant conspired "with each other."

(8) The mere continuation of the results of a crime does not continue the crime. United States v. Irvine, 98 U.S. 450, 25 L.Ed. 193; Meyer v. United States, 9 Cir., 220 F. 800.

(9) To hold that a conspiracy was a continuing one because a result was continued without showing any overt acts since the hatching of the conspiracy would nullify the statute of limitations and permit a prosecution years after the statute had run, merely because the results might go marching on.

I am unable to agree with the opinion of the majority that no appropriate exception was taken to the charge by the Court that "this is a continuing conspiracy." The parties excepted when the Court made this ruling first as shown on pages 431 and 432 of the original record. Exception was also taken on behalf of all the Defendants to that portion of the charge "with respect to the admission in evidence of the statements of the defendants and their binding effect upon the other defendants."

This exception seems ample since it was only by reason of the Court's holding that a continuing conspiracy had been shown that the confession of any Defendant was admitted in evidence against the other Defendants. The ruling of the lower Court that a continuing conspiracy had been shown was the only reason for admitting the statements in evidence with a binding effect upon the other Defendants. The Defendants not only excepted to the Court's charge to the jury but also excepted to the Court's first ruling which was made in the absence of the jury.

It is also true that when the jury became confused by the language of the lower Court in unequivocally stating that he had ruled that there was a continuing conspiracy and returned for further instructions, the Court then stated:

"Here is what I said, that the acts or admissions of each of the co-conspirators are admissible as evidence against all of the other co-conspirators provided you find that there was a conspiracy and that they were all in it."

In view of the prior language of the Court, and in view of the fact that he again refers to the admission of "co-conspirators," the statement evidently is intended to refer to the question of who was in it, for he followed that by saying:

"Of course, if you find that any particular individual defendant was not in this common agreement that the indictment alleges existed, then he would be immediately out of the situation."

The explanation does not explain. However, even if the jury was given to understand by the lower Court that it was their province to determine whether or not there existed a conspiracy and whether or not it continued to the date of the indictment, it was still reversible error to admit the confessions of the Defendants as against any Defendant other than the maker since it clearly appears that no confession was made either in the presence of another Defendant or in furtherance of the alleged conspiracy.

I think the judgment should be reversed and remanded for a new trial.